.UNITED STATES OF AMERICA EX REL. THE
STATE OF LOUISIANA *v.* HON. GEORGE WHIT-
FIELD JACK, JUDGE OF UNITED STATES DIS-
TRICT COURT, WESTERN DISTRICT OF LOU-
ISIANA.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
FIFTH CIRCUIT.

No. 264. Argued May 3, 1917.—Decided June 4,. 1917.

The decision of the Supreme Court of Louisiana in *State* v. *Tensas
Delta Land Co.*, 126 Louisiana, 59, that the State had no interest or
authority entitling it to intervene in a suit brought by the Tensas
.Basin Levee Board for the recovery of lands which the Board had
conveyed after receiving title from the State, is conclusive on this
court, in the absence of any later state decision or statute modifying
its effect.

The Act of Louisiana of August 19, 1910, making it the duty of the
Attorney General, upon the request of the Governor, to represent
the State, or any political agency or subdivision thereof, in suits'
involving land belonging to the State or any such agency or sub-
division, etc., did not operate to divest the Levee Board of its au-
thority over suits to recover land and confer it, through the Governor,
upon the Attorney General; as concerns the Board, its effect was
merely to authorize the Attorney General, at request of the Governor,
to represent the Board in the litigation.

This construction of the Act of August 19, 1910, agrees with the prac-
tical, contemporary construction placed upon it by two Attorneys
General of the State, which the court regards as persuasive authority
as to its true meaning.

Generally speaking, the authority of a court to make new parties to a
suit, especially after decree, rests in its sound discretion, which,
except for abuse, can not be reviewed upon appeal or error, or in-
directly, by mandamus.

With exceptions not here applicable, no person may review a judgment
by appeal or writ of error who is not a party or privy to the record.

Article 571 of the Code of Practice of Louisiana, providing: "The right
of appeal is given not only to those who are parties to a cause in

which a judgment has been rendered against them, but also to third persons not parties to said suit when such third persons allege that they have been aggrieved by the judgment," can have no application to an equity suit in the federal courts.

217 Fed. Rep. 757, affirmed.

THE case is stated in the opinion.

*Mr. Harry Gamble,* Assistant Attorney General of the State of Louisiana, with whom *Mr. A. V. Coco,* Attorney General of the State of Louisiana, was on the briefs, for petitioner.

*Mr. Henry Bernstein* and *Mr. Willard F. Keeney* for respondent.

MR. JUSTICE CLARKE delivered the opinion of the court.

By act of its General Assembly in 1886 amended in 1888 the State of Louisiana created the Tensas Basin Levee District for the purpose of providing a system of levees and other works to aid in protecting the lands within its boundaries from floods and overflow. The act provided for the appointment of a Levee Board of Commissioners to have charge of the affairs of the District and constituted this Board a corporation, with power to sue and be sued, and to sell, mortgage, pledge and otherwise dispose of lands which the State donated and caused to be conveyed to the Board.

In 1898 the Levee Board sold to the Tensas Delta Land Company, Limited, a large acreage of the land thus acquired and executed conveyances for it.

Eleven years later, in 1909, suit was brought by the Attorney General of Louisiana in the name of the State, claiming that the sale of 1898 was fraudulent and void and praying that it should be set aside and that the State should be decreed to be the owner of the property.

Such proceedings were had in the case that the Supreme Court of Louisiana held (*State* v. *Tensas Delta Land Co.*, 126 Louisiana, 59) that the only proper party plaintiff in such a suit was the Levee Board and that the State being without authority to maintain it the case must be dismissed.

After the dismissal of the suit of the State the Levee Board brought suit against the Tensas Basin Land Company, Limited, in a District Court of Louisiana upon the same cause of action stated in the prior petition which case was removed to the United States District Court for the appropriate district. The petition was there given the form of a bill in equity, and as amended, a demurrer to it by the defendant was sustained. On appeal this decision was reversed and the case was remanded for further proceedings, but before the time allowed for answer had expired the defendant appeared and informed the District Court that $100,000 had been paid in settlement of the case agreed upon between the parties and moved the court to dismiss the suit. This motion was filed on July 22, 1913, and a rule was forthwith issued to the plaintiff to show cause on the first day of the next term of the court (October 20th) why the motion should not be granted. The return of service of this rule shows personal service on the Attorney General as Solicitor for the Levee Board and acknowledgment of service by the Board itself.

On August 5 the Board, appearing by its President, answered the rule to show cause, averring that it had "apprised its attorney of record" (the Attorney General of the State) "of the said settlement" and, admitting the allegations of the motion, prayed that the suit be forthwith dismissed at its cost.

The Attorney General for the State, not satisfied with the settlement, on October 6th filed a motion, which he signed "R. G. Pleasant, Attorney General, State of Louisiana and Attorney of Record for Complainant." In this

quite anomalous paper he averred somewhat rhetorically
that the settlement made by the Levee Board for which
he was attorney, was a "condoning and compromising"
of a fraud to which the court should not assent, that he
was acting in the case under authority of an act of the
General Assembly of the State and by order of the Gov-
ernor, to whom alone he was responsible, and "that the
complainant could not compromise this suit, nor dismiss
it without the Governor's consent." He prayed that the
motion to dismiss be denied, the agreement of settlement
disregarded, and that the case be set down for early trial.

The motion to dismiss came on for hearing on October
20th but the court deferred consideration of it until the
next day and caused a telegram to be sent to the Attorney
General in order that he might have full opportunity to
be present and be heard, but he did not appear in person
or by representative, and thereupon the court heard the
evidence and "ordered, adjudged and decreed that the
said compromise . . . be and the same is recog-
nized by this court as having the effect of the thing ad-
judged and as settling all the issues involved in this case,"
and dismissed the suit.

It cannot escape notice that there is no allegation con-
tained in any paper filed by the Attorney General that
the Levee Board in compromising the controversy and
suit did not act in perfect good faith, nor is there any
challenge of the character or competency of the members
of the Board.

After this entry of dismissal no further action was taken
by the Attorney General until on the 6th day of the follow-
ing April when he presented to the District Court a "peti-
tion of the United States of America on the relation of the
State of Louisiana" praying that the State be permitted
to intervene and appeal from the judgment ratifying the
compromise and dismissing the suit.

The District Court denied this petition for leave to

intervene and appeal, and thereupon the Attorney General filed in the Circuit Court of Appeals for the Fifth Circuit a "petition for writs of mandamus and certiorari," in which he prayed that court to order that the State of Louisiana be allowed to intervene in the District Court and to appeal the case and that it order that a transcript of all records be sent up to it for review.

The Circuit Court of Appeals denied this petition assigning two reasons for its action, viz:

(1) Because the Supreme Court of Louisiana, on full consideration, had decided that the State was without real or beneficial interest in the lands in controversy, which decision must be controlling in that court; and

(2) Because the State was not a party to the record in the District Court "and one who is not a party to a record and judgment is not entitled to an appeal therefrom."

This decision is now here for review on certiorari.

This plain statement of the history of this litigation so argues against the claims of the petitioner as to make them in appearance, at least, unsubstantial to the point of being frivolous.

The Supreme Court of Louisiana, considering the statutes of its own State, held, in the case in which the State sought to set aside for fraud the same sale of the same lands involved in this litigation, 126 Louisiana, 59, that the "Legislature vested the absolute title to the lands in controversy in the Board of Commissioners of the Tensas Levee District, with full power to sell the same on such terms as the Board might deem proper. The Legislature also vested in said board full power to sue and be sued, and to stand in judgment, in all matters relating to their gestion and trust." "Most assuredly," also says the court, "the Legislature has divested the State absolutely of all beneficial interest in said lands, and transferred the same to the said Board of Levee Commissioners," and as it "has vested the power to sue and be sued in the Board of

Commissioners of the Tensas Levee District, and has vested no such co-ordinate power in the Governor and Attorney General, we are of the opinion· that the institution of this suit in the name of the State is unauthorized."

· This decision determining the effect of the state statutes, where no claim of federal right was involved, is accepted as conclusive by this court and unless it has been modified by statute (there has been no modifying decision) the application of the State to intervene and to appeal was properly denied.

To the seemingly insurmountable barrier to the claims of the petitioner presented by this Supreme Court decision we must add that the State was not at any time a party to this record and that its first application for leave to intervene and to appeal was long after the term at which the decree of dismissal was rendered and within a few days of the expiration of the time within which even "a real party in interest" would have been allowed an appeal.

With exceptions not even remotely applicable to a case such as we have here it has long been the law as settled by this court that "no person can bring a writ of error [an appeal is not different] to reverse a judgment who is not a party or privy to the record," *Bayard* v. *Lombard*, 9 How. 530, 551, and in *Ex parte Tobacco Board of Trade*, 222 U. S. 578, it was announced, in a *per curiam* opinion, as a subject no longer open to discussion, that "one who is not a party to a record and judgment is not entitled to appeal therefrom," and that a refusal after decree to permit new parties to a record cannot be reviewed by this court directly on appeal, or indirectly, by writ of mandamus, under circumstances such as were there and are here presented.

Two statutes of Louisiana are relied upon by counsel for petitioner to avoid the obvious and seemingly conclusive result of these decisions by this court and by the Supreme Court of Louisiana.

The first of these statutes is Article 571 of the Code of Practice of Louisiana, which reads: "The right of appeal is given, not only to those who were parties to the cause in which a judgment has been rendered against them, but also to third persons not parties to said suit, when such third persons allege that they have been aggrieved by the judgment."

It is urged in argument that in suits in the United States Courts which originate in Louisiana this statute permits an appeal by strangers to the record "who may allege that they have been aggrieved by the judgment," and the decision of the Supreme Court of Louisiana in 126 Louisiana, 59, *supra*, holding that the State cannot "be aggrieved" by this judgment because it is without beneficial interest in the lands which are the subject-matter of this litigation and is without authority to institute a suit for their recovery, is disposed of by saying that it is the practice in Louisiana courts to allow appeals by strangers to the record upon mere allegation of interest, leaving the validity of such allegation to be examined by the appellate court.

This claim cannot be seriously entertained in the face of the long time perfectly settled law that equity suits in federal courts and the appellate procedure in them are regulated exclusively by federal statutes and decisions unaffected by statutes of the States. Textbook citations will suffice: Federal Equity Practice, Street, §§ 97 and 98; A Federal Equity Suit, Simkins, Chapter 1.

The other statute relied upon by the petitioner was enacted by the General Assembly of Louisiana on August 19, 1910, after the decision by the Supreme Court referred to, and reads:

"Be it enacted by the General Assembly of the State of Louisiana, That it is hereby made the duty of the Attorney General of the State, upon the request of the Governor to represent the State or any political agency or subdivision

thereof, in any suit in any court involving title to any land or real property belonging to the State of Louisiana or any of its political agencies or subdivisions, whether the title to said land or real property is vested in or appears in the name of the State or in the name of any of its political agencies or subdivisions."

The claim made by the Attorney General for the State now is that this act "withdrew the authority theretofore granted to the Levee Board by section 3 of the Act of 1886 to sue in such cases as this, with all of the rights pertinent to the right to sue, and delegated it, through the Governor, to the Attorney General."

This is a large repealing effect by implication to be asserted for a statute so worded and apparently so simple, and that such meaning was not given to it by the present Attorney General's predecessor in office, who was charged with the execution of the statute at the time this litigation was commenced and almost immediately after its enactment, is clear from these facts appearing of record:

The suit by the Levee Board as petitioner was commenced after this Act of August 19, 1910, was passed and yet the petition, signed by the Attorney General as one of the Solicitors of the Board, alleges that it was commenced by virtue of a resolution adopted by the Board on the fourteenth day of the preceding July (thus reciting an authority adopted pursuant to power which it is now claimed had been withdrawn from the Board). The petition also recites that the Attorney General (predecessor of the present incumbent) appears in the suit pursuant to the authority and direction of the Governor "to represent said Board of Levee Commissioners . . . in the prosecution of this suit;" that the board is a corporation with power to sue and be sued, to take title to and to sell lands under the same laws which had been construed by the Louisiana Supreme Court (126 Louisiana, 59) and it prays for a decree "recognizing your petitioner [the Levee Board]

to be the owner of all of said lands so fraudulently and illegally conveyed." The Attorney General, with another, signs the petition as Attorney "of the Board of Levee Commissioners of the Tensas Basin Levee District," and when the case was removed to the United States District Court the petition was recast into a bill in equity in which, after repeating the allegations and prayer of the original bill, the then Attorney General adds that the Levee Board has "in compliance with the law as laid down by the Supreme Court of the State of Louisiana in the opinion and judgment rendered by it as aforesaid" (126 Louisiana, 59) "brought this suit as it understands it is its duty to do."

Even in his protest to the District Court against the settlement, the Attorney General appeared "as Attorney of record for the complainant," the Levee Board, and it was long after term and not until six months, lacking sixteen days, after the decree of the District Court approving the settlement had been entered, that he left off the character of solicitor for the Board and, appearing for the State, petitioned for leave for it to intervene and appeal from the decision affirming the settlement approved by his former client. Even in this petition no claim is made that the Board had been deprived of its powers by the Act of August 19, 1910, or that it had acted otherwise than in the utmost good faith in making the compromise.

The first time that this astonishing assertion of a repeal by implication by the Act of August 19, 1910, appears in the record, so far as we can discover, is in the brief filed by a third Attorney General on April 30, 1917.

This summary of the proceedings in the case out of which the petition we are considering grew shows that the predecessor of the present Attorney General, who was in office when the Act of 1910 was passed, and also the Attorney General who succeeded him, both contended, until

nearly six months after the entry of the settlement decree that the Supreme Court had settled as the law of the case that the State was without title or beneficial interest which would enable it to maintain a suit to set aside the sale alleged to be fraudulent; that the proper plaintiff in such a case was the Levee Board to which the State had committed the title, custody and power of disposition of the lands in controversy and also, apparently, that the purpose of the Act of August, 1910, was simply to authorize the Attorney General, on the request of the Governor, to take charge (in this case with another solicitor) of a suit to be instituted by the Levee Board, and thereby to place his professional learning and the weight of his official character at the service of this plaintiff, an "agency or subdivision" of the State. Both Attorneys General assumed that the powers of the State and of the Levee Board over the subject-matter continued as the Supreme Court had defined them to be before the Act of August, 1910, was passed and, as we have seen, it was not until long after the entry of the settlement decree that the contention first appeared that the act took away from the Levee Board and gave to the State the authority to conduct the required litigation.

This contemporary construction of the act by the two law officers of the State charged with acting under it is persuasive authority as to its true meaning, and, upon full consideration, we think it is the correct interpretation of it.

To this we add that, except in a class of cases to which this case does not belong, the authority of a court to make new parties to a suit, especially after judgment or decree, rests in its sound discretion, which, except for abuse, cannot be reviewed upon an appeal or writ of error. No claim is made of abuse of discretion by the District Court and plainly, if made, it would be groundless, since the judge refusing to permit the State to intervene had before him at

the time of his refusal the decision of its own Supreme Court that the State was without title, legal or beneficial, qualifying it to litigate the questions involved.

In the original bill the not uncommon allegation of fraud is made, which is denied in the answer. It was entirely proper for the parties to such a litigation, in good faith "balancing the hope of gaining with the danger of losing" to compromise the case and make an end of the controversy and, as we have said, it is not claimed anywhere in the record that the members of the Levee Board, which settled the suit, were not men of character and probity or that they did not act in perfect good faith in concluding the settlement. To these men the state law committed the care of the interests of the inhabitants of the district and within the bounds of their authority honestly exercised their action was conclusive upon the State.

It results that the decree of the Circuit Court of Appeals must be

*Affirmed.*