As I understand it, there never was any doubt in the minds of the members of the court that the lands from which the oil in dispute was produced were not embraced within the terms of the lease executed by the Caddo levee board to the Pure Oil Producing Company, and that it never was intended that they should be.
It may be true, as stated in the majority opinion, that the intention of the parties was to include in the lease all the lands owned by the levee board in sections 3 and 4 and not theretofore disposed of by it. But since the 55 acres upon which the wells here were drilled were already under lease to the Pure Oil Producing Company from Miss Hanzen and her associates, and since the Pure Oil Producing Company intended to pay and did pay all the royalties upon the oil taken from said wells to its lessors, it necessarily follows that it never contemplated paying them to the levee board, nor did the levee board contemplate receiving them. Therefore it is clear that neither the levee board nor the oil company contemplated contracting with reference to these particular lands, because both of them believed the lands were owned by Miss Hanzen and her associates, and they dealt with them as such. Civ. Code, art. 1961. And there was no mistake on the part either of the levee board or of the oil company when they entered into the lease of the lands as ascertained and defined by the surveyor mutually *Page 360 
selected by them. Having contracted with reference to this survey which fixed and determined the limits of the premises leased and intended to be leased, and having reduced their contract to writing, they are bound thereby. Ker v. Evershed, 41 La. Ann. 15, 6 So. 566; Succession of Bellande, 42 La. Ann. 245, 7 So. 535; Bagley v. Rose Hill Sugar Co., 111 La. 249, 35 So. 539; Rodgers v. Bolinger Co., 149 La. 549, 89 So. 688; Thigpen v. Noonan,162 La. 527, 110 So. 743. Therefore the suggestion in the majority opinion that, if the suit had been brought by the levee board against the Pure Oil Company, that company could demand a reformation of the contract, or rather a confirmation of the original contract, is without force, being wholly inapplicable to the facts.
The rehearing granted herein, while unrestricted in terms, was restricted in fact to the sole question of whether the right of action against the Pure Oil Company was in the state or in the levee board, and, on the argument on rehearing, counsel for the respective parties were directed by the Chief Justice, speaking for the court, to confine their comments to that phase only of the case. In these circumstances, I respectfully maintain that all that portion of the majority opinion which is devoted to a discussion of the intention of the parties in regard to the lease and the reformation thereof is what logicians term petitio principii.
Apart from these preliminary observations, I shall confine my discussion to what I conceive to be the only issue now remaining in the case, i.e., Is the right of action against the trespassing oil company in the state or in the levee board?
It is asserted in the very beginning of the majority opinion that, under the pertinent statutes (Act 74 of 1892 and 160 of 1900) and the certificate, dated July 6, 1901, of the state auditor and the register of the state land office, every character of land belonging to the state within the district was *Page 361 
transferred to the Caddo levee board. Under the broad language of the statute this appears to be correct, and we have so held. See Ellerbe v. Grace, 162 La. 846, 111 So. 185. Nevertheless, I do not think it can be denied that this particular legislative enactment is contrary to the spirit and intention of all the levee board legislation from its inception, and the Caddo levee board has been thereby inadvertently invested with more extensive powers in the acquisition of public lands than has any other levee board within the state. The intention of the Legislature, originally, was to donate to the various levee boards only such lands as belonged to the state by virtue of the grants by Congress of swamp lands for levee and drainage purposes. Later, the Legislature included all lands which the state acquired through tax sales. But at no time were the lands, such as are in question here, acquired by the state in virtue of its sovereignty, ever transferred to any of the other levee boards. Cf. Act 26 of 1884 creating, Act 59 of 1886 re-creating, and Act 77 of 1888 donating certain lands to, the Tensas Basin levee district; Act 44 of 1886, § 2, and Act 191 of 1908, creating the Fifth levee district: Act 103 of 1886, § 19, creating the Atchafalaya and Bayou Des Glaizes special levee district; Act 95 of 1890, § 12, and Act 96 of 1894, concerning the Pontchartrain levee district; Act 13 of 1892, § 11, and Act 55 of 1904, relative to the Lafourche Basin levee district; and Act 14 of 1892, § 11, creating the Lake Borgne levee district.
It is said, also, in the majority opinion, that by reason of the certification the title and the possession of the said lands were vested absolutely in the levee board. In support of the statement a number of cases from our own jurisprudence and one decision by the Supreme Court of the United States are cited. A reading of these cases will show, however, that in only one of them was any such doctrine announced, viz., State v. Tensas Delta Land Co., in refusing a rehearing, *Page 362 126 La. 74, 52 So. 216. None of the other cases, I respectfully submit, are exactly in point, and in four of them it was recognized and held by this court that the levee boards are mere state agencies, and, as between them and the state, the state has the right, at any time, to cancel donations of land made to them, whether acts of conveyance have been executed or not. See State v. Capdervielle, 142 La. 111, 76 So. 327; Atchafalaya Land Co. v. Grace, 143 La. 637, 79 So. 173; Atchafalaya Land Co. v. Williams Cypress Co., 146 La. 1047, 84 So. 351; Atchafalaya Land Co. v. Dibert, etc., Cypress Co., 157 La. 689, 102 So. 871. And in the case in the United States Supreme Court, viz., United States ex rel. Louisiana v. Tensas Delta Land Co., 244 U.S. 397, 37 S. Ct. 605, 61 L. Ed. 1222, supra, it was held, based upon the decision by this court, that the state was without interest to intervene in a subsequent suit by the levee board against the land company and to appeal from a judgment ratifying a compromise and settlement between the plaintiff and the defendant.
But the latest pronouncement by this court on the subject-matter of the relations between the state and its various levee boards appears in the recent case of State v. Grace.161 La. 1039, 109 So. 830. Notwithstanding the statement in the majority opinion to the contrary, I respectfully maintain that the doctrine there announced is in direct conflict with and, in effect, overrules the decision in State v. Tensas Delta Land Co., referred to supra.
In State v. Grace, supra, at pages 1043 and 1044 of the official report (109 So. 831), we said, ex industria, as follows, viz.:
 "The Tensas Basin levee district was created and organized by the state as a means of discharging its duty to protect the lands in said district from inundation. The district is a state agency, created and continued in existence by the state with the foregoing purpose in view. The state, should it transfer the land to the district, including the mineral rights, in accordance with the grant made by it, would not be *Page 363 parting with the property, * * * but would only be placing it under the control of one of its agencies for the purpose of constructing and maintaining levees. Theland would, to all practical intents and purposes,still be the property of the state." (Writer's italics.)
Any fluctuation in the jurisprudence is to be deplored. The public interest requires certainty and stability in the law. Decisions deliberately made after ample consideration of the points in issue should be adhered to. The doctrine announced in State v. Grace, supra, if not directly approved, is not controverted in the majority opinion. I believe, for my own part, that it is fundamentally sound. It is in line with what this court held in Fisher v. Steele, 39 La. Ann. 447, 1 So. 882 (cited and approved in State v. Heard, 47 La. Ann. 1697, 18 So. 746, 47 L.R.A. 512), that a "levee district" could not, by any reasoning, be considered as an association or corporation distinct from and independent of the state; that it is merely a state functionary exercising delegated powers as a part of the government. It is in line with a similar holding in State v. Capdervielle, Atchafalaya Land Co. v. Grace, Atchafalaya Land Co. v. Williams Cypress Co., and Atchafalaya Land Co. v. Dibert, etc., Cypress Co., referred to supra. It is also in line with the decision of the Supreme Court of the United States in Little v. Williams, 231 U.S. 335, 34 S. Ct. 68, 58 L. Ed. 256.
Since the Caddo levee district is a mere department of the state, created by the state as its agent for the construction and maintenance of levees to protect the lands within its limits from overflow, it is a matter of no moment, in my opinion, whether the title to the lands in question was in the state eo nomine, or in the name of the levee board. In the latter case, they were, as said in State v. Grace, supra, "to all practical intents and purposes, still be the property of the state." The state, under the statute creating the levee board, did not divest itself of control of the lands, because the levee board, as its creature, is *Page 364 
subject to its control by legislative enactment in the disposition of the lands transferred to it for levee purposes. Prior to the judgment annulling the certification of the lands, either the state or the levee board, as its agent, could have instituted the present suit. But certainly that right did not reside solely in the creature, the levee board, to the exclusion of the creator, the state. After the rendition of the judgment of nullity, it is clear that the state, and not the levee board, was the proper party to bring the suit. Had the levee board sued, there cannot be any doubt that it would have been met by an exception denying its right or capacity to institute the action and stand in judgment.
But, in my view, it is unimportant to the present issue whether the lands, on which the Hanzen wells were drilled, were actually transferred, or not, to the levee board by virtue of the certificate of the auditor and the register of the land office. That certificate was set aside and annulled by the judgment of the district court for the parish of Caddo. No appeal was taken from the judgment, which was rendered in 1921. It has long since become final, and, right or wrong, it is conclusive upon the state and upon the levee board, and upon any one claiming rights under either of said parties litigant.
It is said in the majority opinion that the judgment was a mere compromise judgment which did not declare the instrument of conveyance from the state to the levee board to be null ab initio. That, had the judgment so declared, it would have been contrary to the recent decision by this court in Ellerbe v. Grace, supra.
It is not wholly correct to say that the judgment was a compromise judgment. On its face, it appears to have been rendered in the ordinary course of the litigation. As a matter of fact, it was based upon evidence in part, stipulations in part, and consent in part. But conceding that it was wholly the result of a compromise, that fact does not alter its *Page 365 
legal effect. It was a judicial action and has the same force and effect as any other judgment. It is binding as such between the parties thereto and their privies. 34 C.J. 133; 3 Freeman on Judgments, p. 2775; Greenwood v. City of New Orleans, 12 La. Ann. 426; Dunn v. Pipes, 20 La. Ann. 276; Wells v. Files, 136 La. 125, 66 So. 749.
I must respectfully take issue, also, with the statement that the judgment did not declare the transfer by the state to the levee board void ab initio. If it did not do so in express terms, that is clearly its legal effect. The contention of the state in that litigation was that its officials who had transferred the property were without any right whatsoever to do so. The judgment recognized this contention to be correct. It does not purport to reconvey the property to the state, but annuls and sets aside the certification made by the officials in question. Their action was thus made void retrospectively, as well as prospectively. 3 C.J. 322. A void act is neither a law nor a command. It is a nullity, conferring no authority and offering no protection. Hopkins v. Clemson Agricultural College, 221 U.S. 636, 31 S. Ct. 654, 55 L. Ed. 895, 35 L.R.A. (N.S.) 243.
It may be that the judgment is contrary to our decision in Ellerbe v. Grace. But the points raised in that case were not set up in the case before the district court for the parish of Caddo, and, as I have heretofore remarked, since the judgment rendered by that court was not reversed nor annulled within the time prescribed by law, it has become final. Whether it is or is not contrary to the Ellerbe v. Grace decision can have no bearing upon the issue now before us.
In the majority opinion, reference is made to the rule that a right of action for damages for trespass already committed does not pass with a conveyance of the land trespassed upon without an express transfer or subrogation of such right. Seven cases from our jurisprudence are cited as supporting the rule. *Page 366 
And it is held that since the right of action for trespass against the Pure Oil Company was not "retroceded" to the state by the "compromise judgment," it remained with the levee board and is not in the state.
An analysis of the cited cases shows that they involve either sales and purchases of lease contracts, and for that reason, in my opinion, they are not appropriate to the present controversy. As I view it, there was no "retrocession" of lands by the levee board to the state. The levee board recognized that it never had received any title to the lands under the so-called certification, and it was so decreed by the judgment of the district court for the parish of Caddo.
The Pure Oil Company is not a third person quoad the land in question acquiring in good faith from the levee board any rights therein. It is nothing more nor less than a trespasser on lands which have been judicially declared, contradictorily with the levee board, to have always belonged to the state. Since the levee board, under the judgment, cannot assert that the right of action for the trespass is in it, I am unable to understand how the Pure Oil Company can do so.
There is also another reason why the state has a right of action against the oil company for its trespass. Act 258 of 1910 declares the beds and waters of the bayous, lagoons, lakes, bays, and rivers of the state to be the property of the state. This statute was in effect at the date of the original lease between the levee board and the Pure Oil Producing Company. At that time, the lands covered by the Hanzen lease were in the bed of Ferry Lake. So that, even if the certification in 1901 was valid, after the adoption of the statute any rights that the levee board might have had in the lands ceased to exist. Therefore, in 1910, and subsequently thereto, the oil taken from the lands was the property of the state and not of the levee board. When the Pure Oil Company committed its trespass, it was against the state, and not against the levee *Page 367 
board. The right of action against it for damages for the trespass was in the state and not in the levee board.
Act 3, Ex. Sess. of 1910, makes it the duty of the Attorney General, upon the request of the Governor, to represent the state or any political agency or subdivision thereof in any suit in any court involving title to any land or real property belonging to the state or any of its political agencies or subdivisions, whether the title to said land or real property is vested in or appears in the name of the state, or in the name of any of its political agencies or subdivisions. And under Act 86 of 1914, the Attorney General was directed by the Legislature to investigate and report to the Governor the claim of ownership by the Caddo levee board of the beds of certain navigable streams and lakes and of certain lands not subject to overflow.
The Act of the Ex. Sess. of 1910 was enacted after, and apparently to meet, the decision in State v. Tensas Delta Land Co., referred to supra. In any event, it, together with the other statutes hereinabove referred to, destroys the force and effect of that decision concerning the respective powers of the Governor, Attorney General, and the levee district as set forth in the liberal quotation from the case in the majority opinion herein.
For the foregoing reasons, as well as for the reasons set forth in the opinion on the original hearing, I respectfully dissent from the conclusions of the court as expressed in the majority opinion on the rehearing, and believe that our original decree should be reinstated and made the final decree in the case.
 Addendum.