**Kay STALEY, Plaintiff,**

v.

**HARRIS COUNTY, TEXAS, Defendant.**

**No. CIV.A.H–03–3411.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 25, 2004.

Randall Lee Kallinen, Attorney at Law, Houston, TX, for Plaintiff.

Frank Sanders, Houston, TX, for Defendant.

### MEMORANDUM AND ORDER

LAKE, District Judge.

Pending before the court is Star of Hope Mission's Motion to Intervene (Docket Entry No. 49). For the reasons set forth below, the motion will be denied.

### I. Procedural History

On August 25, 2003, plaintiff, Kay Staley, initiated this action against Harris County, Texas, pursuant to 42 U.S.C. § 1983, alleging that Harris County's display of a King James Bible in front of the Harris County Civil Courthouse violates the Establishment Clause of the First Amendment to the United States Constitution.[1] On September 18, 2003, Staley amended her complaint, alleging that Harris County had acted under color of law to deprive her of constitutional rights guaranteed by the First and Fourteenth Amendments thereby violating 42 U.S.C. § 1983.[2] Staley sought a declaratory judg-

---

1. Plaintiff's Original Complaint, Docket Entry No. 1 at ¶ 13.

2. Plaintiff's First Amended Complaint, Docket Entry No. 4 at ¶¶ 18–21.

ment stating that the County's actions violated the Constitution's Establishment Clause, a permanent injunction requiring the County to remove the Bible from the monument, and her costs.[3]

Nearly a year later, on August 2 and 3, 2004, this action was tried to the court. On August 10, 2004, the court entered a Memorandum Opinion (Docket Entry No. 46) and a Final Judgment (Docket Entry No. 47). The court ordered the County to remove the Bible from the Mosher Monument and to pay Staley's attorney's fees and expenses within ten days of the entry of Final Judgment, *i.e.,* by August 24, 2004.[4]

On August 19, 2004, the Star of Hope Mission ("Star of Hope") filed a motion to intervene, a motion to vacate the judgment, and memoranda in support of both motions (Docket Entry Nos. 49, 50, 51, 52).

## II. *Standard of Review*

Federal Rule of Civil Procedure 24 authorizes two types of intervention: mandatory intervention (or "intervention of right") and permissive intervention. FED. R. CIV. P. 24(a) & (b).

Mandatory intervention is permitted

(1) when a statute of the United States confers an unconditional right to intervene; or

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

FED. R. CIV. P. 24(a). Star of Hope has not alleged that a federal statute affords it an unconditional right to intervene in this action; therefore, Rule 24(a)(1) does not apply. To intervene as of right pursuant to Rule 24(a)(2), an applicant must satisfy the following four requirements:

(1) the application for intervention must be timely;

(2) the applicant must have an interest relating to the property or transaction that is the subject of the action;

(3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair its ability to protect that interest; and

(4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Ford v. City of Huntsville,* 242 F.3d 235, 239 (5th Cir.2001) (citing *Taylor Communications Group, Inc. v. Southwestern Bell Tel. Co.,* 172 F.3d 385, 387 (5th Cir.1999)).

Failure to satisfy any of these requirements precludes mandatory intervention. *Edwards v. City of Houston,* 78 F.3d 983, 999 (5th Cir.1996) (*en banc*) (citing *Sierra Club v. Espy,* 18 F.3d 1202, 1205 (5th Cir.1994)); *Kneeland v. Nat'l Collegiate Athletic Ass'n,* 806 F.2d 1285, 1287 (5th Cir.), *cert. denied,* 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 35 (1987). The inquiry under subdivision (a)(2) is a flexible one, "which focuses on the particular facts and circumstances surrounding each application ... [and] must be measured by a practical rather than technical yardstick." *United States v. Texas E. Transmission Corp.,* 923 F.2d 410, 413 (5th Cir.1991) (concluding that, practically speaking, the disposition of the action in question was not likely to impair the interests articulated by the prospective intervenor).

Alternatively, upon *timely* application, a party may be entitled to permissive intervention

(1) when a statute of the United States confers a conditional right to intervene; or

(2) when an applicant's claim or defense and the main action have a question of law or fact in common.

FED. R. CIV. P. 24(b). Permissive intervention "is wholly discretionary with the [district] court ... even though there is a common question of law or fact, or the re-

---

3. *Id.* at p. 16.

4. See Final Judgment, Docket Entry No. 47.

quirements of Rule 24(b) are otherwise satisfied." *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 471 (5th Cir.) *(en banc), cert. denied sub nom., Morial v. United Gas Pipe Line Co.,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). After making the threshold determination that the proposed intervenor raises a common "question of law or fact," and before exercising its discretion, the court should consider two factors:

(1) whether other parties adequately represent the intervenors' interests; and

(2) whether intervention will unduly delay the proceedings or prejudice existing parties.

*Kneeland,* 806 F.2d at 1289.

### III. *Analysis*

Star of Hope argues that it is entitled to mandatory intervention pursuant to Rule 24(a)(2), or that the court should allow permissive intervention pursuant to Rule 24(b)(2), or that the court should grant it leave to intervene for purposes of appeal.[5] The basis for intervention is Star of Hope's contention that its "property interest and fundamental constitutional rights" have been implicated by the court's Order of August 10, 2004, "in a way [Star of Hope] never anticipated."[6] In other words, Star of Hope ar-

gues that it did not recognize until August 10, 2004, that its rights might be affected if Harris County were ordered to remove the Bible, which Star of Hope owns,[7] from the Mosher Monument in front of the County Courthouse.

### A. Intervention in This Action

#### 1. *Timeliness*

 The law governing Rules 24(a)(2) and 24(b) emphasizes the importance of timeliness as an indispensable factor. If an applicant for intervention cannot satisfy the timeliness factor, the court need not address the Rules' other requirements. *See Edwards,* 78 F.3d at 999. When a court denies a motion for leave to intervene based on a finding that the motion was not timely, that determination is reviewed under an abuse of discretion standard. *Id.*

 In *Stallworth v. Monsanto Co.,* 558 F.2d 257 (5th Cir.1977), the Fifth Circuit established four factors to consider when evaluating the timeliness of a motion to intervene: (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the action before petitioning for leave to intervene, (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure

---

5. Motion for Leave to Intervene, Docket Entry No. 49 at p. 1. Star of Hope also argues that its joinder under Rule 19(a) was mandatory. *Id.* at pp. 6–8. However, Rule 19 exists largely to give those parties actually named in a lawsuit a potential defense if they can meet their burden of establishing that a party, which has not been sued, is indispensable, thereby making its joinder necessary. *See* 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1609 (3d ed.2001). Harris County, if anyone, should have sought to join Star of Hope if the latter's presence in this action was necessary for just adjudication, as both the County and Star of Hope now contend. The County should have done this in a motion made under Rule 12(b)(7) for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). The County, however, stated in the Joint Discovery/Case Management Plan Under Rule 26(f)(Docket Entry No. 16 at ¶¶ 4 and 5) that no additional parties were needed.

Although Star of Hope endeavors to rely on *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 738, 19 L.Ed.2d

936 (1968), in arguing that joinder is now mandatory, that case states that "a court may always proceed without considering the potential effect on nonparties simply because they are not 'bound' in the technical sense." *Id.* at 738 (citations omitted). Moreover, the Supreme Court in *Provident Tradesmens* held that a court of appeals is encouraged to take steps to protect a party that was absent from the action below only if that party "had no opportunity to plead and prove [its] interest below." *Id.* (citations omitted). As the court will discuss, *infra,* Star of Hope had sufficient opportunity to protect its alleged property interest well before this case was decided. Moreover, the County has raised the same constitutional interest throughout this litigation that Star of Hope now claims it seeks to protect.

6. Memorandum in Support of Proposed Intervenor Star of Hope Mission's Motion to Intervene, Docket Entry No. 50 at p. 1.

7. See Declaration of Jack I. Tompkins, Chairman of the Board of Trustees of Star of Hope Mission, Docket Entry No. 53 at ¶¶ 13, 15, 16.

to apply for intervention as soon as it actually knew or reasonably should have known of its interest in the action, (3) the extent of the prejudice that the would-be intervenor may suffer if its petition for leave to intervene is denied, (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Id.* at 264–66. "There are no absolute measures of timeliness." *Edwards,* 78 F.3d at 1000 (citing *Stallworth,* 558 F.2d at 264–66; *Sierra Club,* 18 F.3d at 1205). Instead, "[t]imeliness is to be determined from all the circumstances." *Corley v. Jackson Police Dep't,* 755 F.2d 1207, 1209 (5th Cir.1985) (quoting *NAACP v. New York,* 413 U.S. 345, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973)).

■ The action into which Star of Hope seeks to intervene was filed a year ago. A great deal of publicity followed in the wake of that filing.[8] Star of Hope does not contend that it was unaware of this lawsuit or the televised rallies and other media attention that the lawsuit engendered. In fact, two Star of Hope representatives testified at trial.

Star of Hope cites several cases for the proposition that awareness of the pendency of the litigation in question "alone is insufficient to start the running of the timeliness clock."[9] However, these cases emphasize the importance of the date when the would-be intervenor knew or should have known that it had some stake in the action. *See, e.g., Sierra Club,* 18 F.3d at 1206 (emphasizing that the status of multiple claims brought by several plaintiffs "changed radically over the course of the lawsuit," that the claims that could affect the would-be intervenors' interests were not raised until the fourth amended complaint was filed one year into the lawsuit, and that the intervenors moved

to intervene shortly after a preliminary injunction issued, which was when they became aware that their interests would be affected by the litigation).

In contrast to *Sierra Club,* the relief that plaintiff sought in this case was clear from the outset: she sought removal of the Bible, which the County always acknowledged was Star of Hope's property, from County property. Removal of the Bible has been the Plaintiff's goal in this action since she filed the original complaint. It was that goal that incited so much publicity and prompted some members of the public to attend protest rallies in front of the monument shortly after the action was filed. This litigation and the attendant publicity was not unfolding in some remote venue unbeknownst to Star of Hope. It was being played out in Star of Hope's backyard.

■ Star of Hope argues that it was only when the court issued its August 10, 2004, Memorandum Opinion that Star of Hope became aware that its rights, flowing from its ownership of the Mosher Monument Bible, were at risk.[10] Such an assertion is impossible to square with the basic facts underlying this action. Simply put, Star of Hope's argument that an order requiring the removal of its Bible from the Mosher Monument was "never anticipated" is not credible.[11] This assertion is only believable to the extend that Star of Hope is stating that it "never anticipated" that the County might lose. But a failure of imagination is not germane to the law governing intervention. If Star of Hope was genuinely concerned about protecting its rights in this litigation, it could and should have filed a motion for leave to intervene long ago. If the County was genuinely concerned that it would be unable to comply with any potential court order without violat-

---

8. Vast publicity is not a prerequisite for establishing that a potential intervenor knew or should have known about its stake in a particular lawsuit and thus failed to act in a timely manner. The court merely observes that the existence of extensive publicity surrounding this action seriously undermines Star of Hope's position that it filed the pending motion in a timely manner. *See Doe # 1 v. Glickman,* 256 F.3d 371, 375 (5th Cir.2001); *Edwards,* 78 F.3d at 1000 (explaining that the "timeliness clock" runs from the time when the proposed intervenor knew or should

reasonably have known of its stake in the action into which it seeks to intervene).

9. See Memorandum in Support of Proposed Intervenor Star of Hope Mission's Motion to Intervene, Docket Entry No. 50 at p. 9.

10. *Id.* at p. 10.

11. *Id.* at p. 1.

ing Star of Hope's rights,[12] it could have filed a motion to dismiss for failure to join a necessary party, or sought to add the Star of Hope as a party.[13] Neither the Federal Rules of Civil Procedure nor the law of equity rewards those who slumber on their rights, particularly under the circumstances presented by this high profile, local lawsuit. The court therefore concludes that Star of Hope cannot satisfy the basic requirements of timeliness for either mandatory or permissive intervention.

### 2. *Star of Hope's Alleged Interests*

■ Even if Star of Hope's motion to intervene had been timely filed, the court is unpersuaded that the substantive rights that Star of Hope alleges it must now seek to protect would have mandated intervention. First, Star of Hope's contention that carrying out the court's August 10, 2004, Final Judgment "will result in the conversion of Star of Hope's property" is a specious argument.[14] Both Star of Hope and the County are in agreement that Star of Hope owns the Bible and that Star of Hope possesses the only keys that can unlock the glass case containing that Bible. If Star of Hope is concerned that its property may be "seriously jeopardized"[15] when the Bible is removed, Star of Hope can simply send a representative over to the Courthouse grounds with a key, unlock the glass case, and remove its Bible, or a Star of Hope representative can stand by while the County removes the Bible and then take immediate possession of it. Because the Bible is on County property, the County has represented to the court that, although it does not own the Bible, it has the authority to remove it or even the entire Mosher Mon-

ument at any time. The record does not reflect that County officials have been anything other than cooperative with Star of Hope and indeed solicitous of its interests throughout this litigation.

■ Finally, Star of Hope's contention that intervention is necessary to protect constitutional rights to free speech and free exercise of religion that were heretofore "never anticipated" or to address the conflict between rights guaranteed by the Establishment Clause and the Free Exercise Clause is also unsound.[16] These concerns were articulated throughout this litigation. At the outset of this action, other parties—Karen Friend, William Drout, and Lisa Drout—sought to intervene on the basis of protecting their First Amendment rights to free speech and the free exercise of religion.[17] These applicants for intervention claimed that they had "property rights" in the Mosher Monument arising from their fund-raising and maintenance efforts that led to the Bible being restored to the Mosher Monument after at least a seven-year absence.[18] That argument failed because intervention requires that an intervenor establish an interest that "the *substantive* law recognizes as belonging to or being owned by the party seeking intervention." *New Orleans Public Service*, 732 F.2d at 464 (emphasis in original). Although the First Amendment argument initially formulated by Karen Friend, *et al.*, failed in part because those applicants for intervention did not claim to own the Bible, that argument was a matter of public record that received extensive media attention. Thus, it was an argument about which Star of Hope knew or should have known long ago.[19]

---

12. See Defendant Harris County's Response to Star of Hope Mission's Motion to Intervene, Docket Entry No. 54 at ¶ 3.

13. As discussed below, even had Star of Hope sought to intervene in a timely manner the court is not convinced that the Star of Hope could have overcome the presumption that the County would have adequately represented Star of Hope's stated interests in this action.

14. Memorandum in Support of Proposed Intervenor Star of Hope Mission's Motion to Intervene, Docket Entry No. 50 at p. 3.

15. *Id.*

16. *Id.* at p. 1.

17. See Motion for Leave to File Intervention, Docket Entry No. 6.

18. Karen Friend, William and Lisa Drout's Supplement to Motion for Intervention and Reply, Docket Entry No. 12 at p. 8.

19. Star of Hope's argument that, because it is a non-profit, community service organization, it did "not have the legal knowledge or know-how to understand the implications or the requests for relief in Plaintiff's Complaint" is neither reasonable nor relevant to any legally cognizable

More importantly, the free speech/free exercise argument that Star of Hope now seeks to raise through intervention was raised by the County during this litigation.[20] However, the County did not provide any evidence at trial to support its claim that the plaza in front of the County Courthouse is a traditional public forum for groups seeking to erect permanent fixtures. Nor did (or could) the County cite any law supporting the proposition that the existence of one private group's permanent monument on the Courthouse grounds demonstrated that the County property was available to all groups so that Star of Hope, in being required to remove its Bible, was a potential victim of viewpoint discrimination. *See Rosenberger v. Rector and Visitors of the Univ. of Virginia*, 515 U.S. 819, 115 S.Ct. 2510, 2516, 132 L.Ed.2d 700 (1995).

■ When the putative representative of an interest is a government entity, two presumptions of adequate representation arise. *See Edwards*, 78 F.3d at 1005. First, where the governmental entity is charged by law with representing the interests of the absentee, a presumption of adequate representation arises if the prospective intervenor is a citizen or subdivision of the governmental entity. *Id.* Because Star of Hope is a citizen of Harris County, to overcome this presumption it would have had to show that its interest "is in fact different from that of the [governmental entity] and that the interest will not be represented by [it.]" *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir.1994) (*per curiam*) (citations omitted).

■ The second presumption of adequate representation arises when prospective intervenors have the same ultimate objective as a party to the lawsuit. *Edwards*, 78 F.3d at 1005. The County sought a judgment holding that the display of the Mosher Monument Bible on Harris County property did not violate Staley's constitutional rights, which is precisely the outcome that Star of Hope claims that it seeks to further through a belated intervention. Therefore, even if Star

of Hope's motion to intervene had been timely filed, Star of Hope would have had to overcome the presumption of adequate representation by showing "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Id.* (citing *United States v. Franklin Parish Sch. Bd.*, 47 F.3d 755, 757 (5th Cir.1995)). Star of Hope has not cited any basis for a finding that the County had an adverse interest or that it was guilty of collusion or a failure to act when a duty to act existed.

■ Star of Hope contends that the County did not argue that activities affecting the Mosher Monument constitute protected First Amendment activities. But this position reveals misapprehension of both the law and the facts. Just as the County is bound by the Constitution's Establishment Clause, it is bound by a constitutional mandate not to discriminate against religious speech. However, private citizens and entities do not have an automatic entitlement to exercise free speech (including religious speech) anytime and anywhere. Before a state entity like Harris County can be liable for infringing on the free speech rights of a private entity, there must be a showing that the private entity had a right to exercise religious speech in that particular time, place, and manner, and that the private entity was deprived of that right based on a particular viewpoint. *See Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 274, 70 L.Ed.2d 440 (1981). The public interest, which the County is required to serve, lies in striking the appropriate balance between the First Amendment's guarantee of free speech and exercise of religion and its prohibition of any law respecting the establishment of religion. *See Congregation Lubavitch v. City of Cincinnati*, 923 F.2d 458, 460 (6th Cir.1991).

In this action the County had an interest in establishing that it granted Star of Hope permission to exercise its speech through the Bible display in a way that did not offend the Constitution. The County did in fact raise the constitutional argument that Star of

---

excuse for its delay. See Memorandum in Support of Proposed Intervenor Star of Hope Mission's Motion to Intervene, Docket Entry No. 50 at pp. 2–3.

**20.** See Defendant Harris County's Trial Memorandum, Docket Entry No. 33 at p. 4.

Hope now seeks to make. That argument was subsequently rejected by the court because the County did not prove at trial that its actions comported with the dictates of Establishment Clause jurisprudence. Specifically, the County failed to show that the area surrounding the County Courthouse has been designated or used as a traditional public forum for erecting permanent monuments or displays.[21] Just because the County was unsuccessful at trial does not mean that the "potential ramifications" of this action "escaped the attention" of the County (or Star of Hope) until a Final Judgment issued.[22]

### B. Intervention for Purposes of Appeal

"It is well-settled that one who is not a party to a lawsuit, or has not properly become a party, has no right to appeal a judgment entered in that suit." *Edwards,* 78 F.3d at 993 (citing *Marino v. Ortiz,* 484 U.S. 301, 108 S.Ct. 586, 587–88, 98 L.Ed.2d 629 (1988); *Karcher v. May,* 484 U.S. 72, 108 S.Ct. 388, 391–93, 98 L.Ed.2d 327 (1987) (and cases cited therein, especially *United States ex rel. Louisiana v. Jack,* 244 U.S. 397, 37 S.Ct. 605, 61 L.Ed. 1222 (1917)); FED. R. APP. P. 3(c) requires that "[a] notice of appeal ... specify the *party or parties* taking the appeal." (emphasis added by Fifth Circuit)). The court, therefore, declines to grant Star of Hope leave to intervene for the purposes of the appeal.[23]

### IV. *Conclusion and Order*

For the foregoing reasons, Star of Hope Mission's Motion to Intervene (Docket Entry No. 49) is **DENIED.** Because the court has denied the motion to intervene, the court has no jurisdiction to rule on the Intervenor's Motion to Vacate Judgment, for New Trial, and for Stay of Judgment (Docket Entry No. 51), and that motion is therefore **DISMISSED.**

---

**21.** See Memorandum Opinion, Docket Entry No. 46 at pp. 10–13.

**22.** See Memorandum in Support of Proposed Intervenor Star of Hope Mission's Motion to Intervene, Docket Entry No. 50 at p. 10.

**23.** The day after Star of Hope filed its motion to intervene (Docket Entry No. 49), the County filed a notice of appeal (Docket Entry No. 55). A notice of appeal "typically divests the district court of jurisdiction." *Resolution Trust Corp. v. Smith,* 53 F.3d 72, 76 (5th Cir.1995) (quoting *Alberti v. Klevenhagen,* 46 F.3d 1347, 1358 (5th Cir.1995)). There is Fifth Circuit precedent that the court was divested of jurisdiction when the County filed its notice of appeal before the court had the opportunity to rule on the motion to intervene. *See Nicol v. Gulf Fleet Supply Vessels, Inc.,* 743 F.2d 298, 299 (5th Cir.1984). However, the Fifth Circuit has more recently concluded that a district court "maintains jurisdiction as to matters not involved in the appeal." *Resolution Trust,* 53 F.3d at 76 (quoting *Farmhand, Inc. v. Anel Eng'g Indus.,* 693 F.2d 1140, 1145 (5th Cir.1982)). Star of Hope's motion to intervene is not directly related to the County's appeal. Moreover, the court was already evaluating Star of Hope's motion when the County filed its notice of appeal. Therefore, to avoid delay and interference with the appellate process and to maximize judicial resources at both the district and appellate court levels, the court ruled on Star of Hope's motion to intervene.