847 F.2d 1038
 FARMLAND DAIRIES and Fair Lawn Dairies, Inc., Plaintiffs-Appellees,
v.
COMMISSIONER OF the NEW YORK STATE DEPARTMENT OF AGRICULTURE
AND MARKETS, and Joseph Gerace, Former
Commissioner of the New York State
Department of Agriculture and
Markets, Defendants-Appellees,
and
Gold Medal Farms, Inc., Manchester Cream Co., Beachhurst
Farms, Inc., Dellwood Foods, Inc., Elmhurst Milk & Cream
Co., Inc., Hy-Grade Milk & Cream Co., Inc., Meadowbrook
Farms, Inc., Park Lane Dairies, Inc. and Silvercrest Farms,
Inc., Proposed Intervenors-Appellants.
 Nos. 1275 to 1278, Dockets 87-7108, 87-7110, 87-7210, 87-7212.
 United States Court of Appeals,
Second Circuit.
 Argued June 12, 1987.
Decided May 26, 1988.
 
 John M. Freyer, Albany, N.Y. (Bond, Schoeneck & King, Richard A. Reed, Albany, N.Y., of counsel), for proposed intervenors-appellants Beachhurst Farms, Inc., Dellwood Foods, Inc., Elmhurst Milk & Cream Co., Inc., Hy-Grade Milk & Cream Co., Inc., Meadowbrook Farms, Inc., Park Lane Dairies, Inc. and Silvercrest Farms, Inc.
 Stuart I. Friedman, New York City (Friedman, Wittenstein & Hochman, Andrew A. Wittenstein, David J. Nathan, Jody Kasten, New York City, of counsel), for plaintiffs-appellees.
 Barrie L. Goldstein, Asst. Atty. Gen., State of N.Y., New York City (Robert Abrams, Atty. Gen., State of N.Y., O. Peter Sherwood, Sol. Gen., R. Scott Greathead, First Asst. Atty. Gen., New York City, of counsel), for defendants-appellees.
 Michael G. Shannon, New York City (Summit Rovins & Feldesman, Michelle I. Schauer, New York City, of counsel) for proposed intervenors-appellants Gold Medal Farms, Inc. and Manchester Cream Co.
 Before VAN GRAAFEILAND, KEARSE and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 Plaintiffs-appellees Farmland Dairies and Fair Lawn Dairies, Inc. (collectively "Farmland") are dairy companies based in New Jersey and licensed by the New York Department of Agriculture and Markets (the "Department") to distribute milk in New York State in Orange, Richmond, Rockland and Westchester counties.[1] Until January 2, 1987, defendant Joseph Gerace was the Commissioner of the Department (the "Commissioner") and was responsible, inter alia, for administration of the law governing the licensing of milk dealers in New York. The proposed intervenors-appellants ("Appellants") are milk dealers based in New York and licensed to distribute milk in the New York metropolitan area.
 
 
 2
 In an action brought by Farmland against Commissioner Gerace in the United States District Court for the Eastern District of New York, Leonard D. Wexler, Judge, Farmland contested the refusal of the Commissioner to allow Farmland to distribute milk in New York, Bronx, Kings and Queens counties as violative of the interstate commerce clause of the federal Constitution. The district court agreed, and ordered the Commissioner to refrain from applying New York's Agriculture and Markets Law unconstitutionally so as to deprive Farmland of access to the New York metropolitan milk market. See Farmland Dairies v. Comm'r of New York State Dep't of Agric. and Mkts., 650 F.Supp. 939 (E.D.N.Y.1987). Thereafter, the parties entered into a settlement agreement. Appellants then sought leave to intervene in order to appeal the district court's judgment. The district court denied the motion as untimely.
 
 
 3
 Appellants took these appeals from the district court's order denying intervention, and from several other orders of the district court in this action. For the reasons set forth below, we conclude that the district court's denial of Appellants' motions to intervene was not an abuse of the court's discretion. Accordingly, we affirm that order, and dismiss the appeals taken from the remaining orders.
 
 Background
 
 4
 New York regulates the sale of milk pursuant to a licensing scheme set forth in Article 21 of its Agriculture and Markets Law, N.Y.Agric. & Mkts.Law Secs. 252 through 258-r (McKinney 1972 & Supp.1988), and regulations promulgated thereunder, N.Y.Admin.Code tit. 1A, Secs. 24-1.1 through 24-1.5 (1986). An applicant seeking to sell milk in New York must apply to the Department for a license or licenses on a county-by-county basis. Id. at Secs. 24-1.3(a)(2) and 27.1. Until recently, section 258-c of the Agriculture and Markets Law permitted the Commissioner to deny any license if he "finds by a preponderance of the evidence, after due notice and opportunity of hearing to the applicant or licensee, ... that the issuance of the license will tend to a destructive competition in a market already adequately served; or ... that the issuance of the license is not in the public interest."[2]
 
 
 5
 On December 30, 1985, Farmland applied for an extension of its milk dealer's license to serve New York, Bronx, Kings and Queens counties (the "four counties") which, together with Richmond County (a/k/a Staten Island), constitute New York City. In early April, 1986, Farmland was notified that the Department would hold hearings on the application. The hearings were conducted from June 23 to July 18, 1986.
 
 
 6
 By notice dated April 17, 1986, the Department notified affected milk dealers that Tuscan Dairy Farms, Inc. ("Tuscan"), a New Jersey-based dairy in competition with Farmland, had applied on April 10, 1986 for an extension of its New York license to acquire and operate the assets of the Metropolitan Division of Dairylea Cooperative, Inc. ("Dairylea"), a major New York dairy manufacturing concern. This division included a Queens County processing plant and distributed milk throughout New York City, as well as in Nassau, Suffolk and Westchester counties. The Department's notice invited submission of written comments pertaining to Tuscan's application not later than April 30, 1986, and stated an intention to take "prompt action on the application after consideration of written comments and other relevant facts."
 
 
 7
 In response to this notice, a law firm representing Farmland wrote the Commissioner on April 25, 1986 objecting to allegedly discriminatory treatment of Farmland's four-county application, on which hearings were scheduled, in contrast with Tuscan's application, which was to be the subject of "prompt action" without hearings. Tuscan's application was granted, and its license extension became effective on May 5, 1986.
 
 
 8
 Thereafter, pursuant to New York's Freedom of Information Law, Farmland requested the Department to provide information concerning the background of Tuscan's application. The response disclosed a letter dated May 6, 1986 from the Department to Tuscan conditioning the Tuscan approval on the understanding that for one year following the effective date of its license extension, Tuscan would notify the Department and obtain approval "for any significant change in plant source of packaged milk" for the Metropolitan Division of Dairylea. Notification, but not approval, was required during the second and third years, and thereafter if the Queens processing plant was to be shut down for a period in excess of one week or closed. Thus, the milk to be processed at the Queens processing plant would continue to originate in New York, and the Tuscan acquisition would not introduce into New York, at least immediately, competition based in New Jersey.
 
 
 9
 On June 9, 1986, Farmland commenced the instant litigation against Commissioner Gerace in his official and individual capacities. Farmland sought a declaration that N.Y.Agric. & Mkts.Law Sec. 258-c, as applied to block Farmland from selling milk in the four counties, violated the commerce clause of the federal Constitution, and that Gerace had violated Farmland's equal protection and due process rights under the fourteenth amendment. Farmland sought both injunctive relief and damages.
 
 
 10
 On June 10, 1986, by order to show cause, Farmland moved for a preliminary injunction restraining Gerace from continuing to enforce section 258-c in a manner violative of the Constitution. The motion was denied by the district court on July 29, 1986, without prejudice to its renewal on October 13, 1986, by which date Gerace was to have decided Farmland's four-county application.
 
 
 11
 Meanwhile, the Department's hearings on Farmland's application commenced on June 23 and concluded on July 18, 1986. The administrative record consisted of over two thousand pages of testimony by thirty-six witnesses, and sixty-one exhibits. The Appellants intervened and participated in the administrative proceedings, offering evidence relevant to the statutory concerns of destructive competition and the public interest.
 
 
 12
 On August 7, 1986, Commissioner Gerace moved for summary judgment before Judge Wexler. On August 22, 1986, Farmland cross-moved for partial summary judgment, contending that there existed no genuine issue of material fact as to the Commissioner's violation of the commerce clause in his administration of section 258-c.
 
 
 13
 On September 10, 1986 the hearing officer presiding over the state administrative proceeding issued a detailed report recommending that Farmland's application to sell milk in the four counties be granted. The report was sent to Commissioner Gerace for a final determination.
 
 
 14
 No determination concerning Farmland's application was reached by October 13, 1986, so Farmland renewed its motion for a preliminary injunction on October 14. On October 24, 1986, just prior to the scheduled oral argument on the motions before the district court, Commissioner Gerace issued a determination to reopen the administrative hearing on Farmland's application "for the purpose of receiving specific testimony and evidence concerning customer solicitation, capacity and service throughout the entire market." The district court declined to rule on any of the pending motions, but secured a commitment from Commissioner Gerace that a decision would be rendered on Farmland's application by December 11, 1986. On that date, Gerace denied Farmland's application to sell milk in the four counties.
 
 
 15
 There was widespread public criticism of that decision. New York State Governor Cuomo described the "outcome" as "disappointing," although expressing his confidence that Commissioner Gerace "exercised his best judgment on the law." New York City Mayor Koch stated "[t]he consumer has been dealt a body blow," and assailed Commissioner Gerace as "becoming the protector of the milk monopoly." Gerace resigned as Commissioner on January 2, 1987.
 
 
 16
 On January 8, 1987, the district court issued a memorandum and order in which it sustained Farmland's commerce clause claim. Judge Wexler held that Gerace's application of section 258-c to Farmland's application had both the purpose and the effect of discriminating against interstate commerce. Farmland's motion for summary judgment was granted, and the Commissioner was permanently enjoined "from applying section 258-c unconstitutionally by continuing to deny Farmland access to the New York milk market."[3] 650 F.Supp. at 951. The court rejected defendants' claims that Farmland lacked standing and that Farmland's commerce clause claim was moot. The district court also denied defendant's motion for summary judgment with respect to Farmland's claim for damages, concluding that material issues of fact existed with respect to defendant's eleventh amendment and official immunity defenses to that claim.
 
 
 17
 Immediately after the district court issued its decision, representatives of New York State Attorney General Robert Abrams consulted with the office of Counsel to the Governor (collectively the "State") to determine whether to appeal the court's judgment. They assessed Farmland's ultimate likelihood of success, and the nature and burden of any proceedings likely to ensue if the State were successful on appeal. They considered that a remand from a successful appeal would precipitate extensive discovery and a complex, expensive trial, and that if Farmland were to prevail following trial on its damages claim against former Commissioner Gerace, the State, which would presumably indemnify Gerace, would be exposed to a substantial money judgment. See N.Y.Pub.Off.Law Sec. 17 (McKinney Supp.1988) (requiring state defense and indemnification of state employees under certain circumstances). Based upon these considerations, the State decided not to appeal.
 
 
 18
 Negotiations with Farmland followed. An agreement settling this case and related litigation[4] was reached on January 9, 1987, and was promptly announced by Governor Cuomo. The State agreed to forgo an appeal of the district court decision and to license Farmland to sell milk in the four counties, as well as in Nassau and Suffolk counties. Farmland agreed to drop its damage claim against Gerace, contingent upon reaching an agreement for State reimbursement of Farmland's litigation costs and attorneys' fees, which thereafter occurred.
 
 
 19
 On January 12, 1987, Farmland, the State and Appellants appeared before Judge Wexler. The terms of the settlement were read into the record, and the court marked the case "settled and discontinued with prejudice."[5] At this juncture, Appellants moved for leave to intervene in this litigation "both for reargument ..., and so that if necessary, the intervenors may pursue an appeal to the Court of Appeals for the Second Circuit...." In response to questions posed by Judge Wexler, Appellants admitted that although they had made no earlier application to intervene, they had been aware of this lawsuit since July, 1986. Appellants stated that they deemed their interests adequately represented by the State prior to the settlement, although Appellants' attorneys never personally reviewed the relevant court files.
 
 
 20
 Farmland and the State were permitted until January 23, 1987 to respond to the motions for intervention. Oral argument followed on February 5, 1987. Prior to the oral argument, however, Appellants filed notices of appeal from the memorandum and order granting Farmland summary judgment and a permanent injunction which was entered January 8, 1987, and the order of discontinuance entered January 13, 1987.
 
 
 21
 On February 5, 1987, the district court denied Appellants' applications to intervene, finding them untimely and likely to cause prejudice to the existing parties if they were granted. The court's order denying intervention was entered on February 19, 1987. Appellants filed further notices of appeal on March 2, 1987.[6]
 
 
 22
 The State moved to dismiss the appeals by motion dated March 18, 1987; by order dated April 7, 1987, another panel of this court denied the motion without prejudice to its renewal before this panel. All appeals have been consolidated.
 
 
 23
 Numerous arguments have been presented to us. Appellants argue that they filed timely notices of appeal from the injunction order; that the appeals present a case or controversy; that the district court abused its discretion in denying the intervention motions; that the court erred in denying the State's motion for summary judgment and in granting Farmland's; and that the court violated the abstention doctrine in enjoining the Department from applying section 258-c to Farmland. The State contends that this court has no power to hear these appeals, arguing that Appellants failed to file a timely notice of appeal from the injunction order; that no case or controversy exists; and that Appellants lack standing to appeal the injunction order. The State also argues that the district court did not abuse its discretion in denying intervenor status to Appellants under Fed.R.Civ.P. 24(a)(2). Farmland similarly contends that this court is without power to entertain these appeals because the State's decision not to appeal the injunction order has extinguished any otherwise viable case or controversy, that Appellants lack standing, and that the case, having been settled, is moot. Alternatively, Farmland argues that the district court's Rule 24 order was sound. Farmland has also presented arguments going to the merits.
 
 
 24
 We find it necessary to treat only the intervention issue.
 
 Discussion
 
 25
 In general, only a party of record in an action may appeal an adverse judgment. Marino v. Ortiz, --- U.S. ----, ----, 108 S.Ct. 586, 587, 98 L.Ed.2d 629 (1988) (per curiam) (citing United States ex rel. Louisiana v. Jack, 244 U.S. 397, 402, 37 S.Ct. 605, 607, 61 L.Ed. 1222 (1917), and Fed.R.App.P. 3(c)); Martin-Trigona v. Shiff, 702 F.2d 380, 385 (2d Cir.1983); United States v. McFaddin Express, Inc., 310 F.2d 799, 801 (2d Cir.1962). Of course, parties of record include those who have been permitted to intervene. Hispanic Soc'y v. New York City Police Dep't, 806 F.2d 1147, 1152 (2d Cir.1986), aff'd sub. nom. Marino v. Ortiz, --- U.S. ----, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988) (per curiam). Accordingly, the threshold (and ultimately dispositive) question before us is the correctness Judge Wexler's order denying intervention.
 
 
 26
 Appellants sought leave to intervene as of right pursuant to Fed.R.Civ.P. 24(a)(2). Under Rule 24(a)(2), the proposed intervenor must "(1) file timely, (2) demonstrate an interest in the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise adequately protected." United States v. New York, 820 F.2d 554, 556 (2d Cir.1987) (citing Restor-A-Dent Laboratories, Inc. v. Certified Alloy Products, Inc., 725 F.2d 871, 874 (2d Cir.1984)). Failure to satisfy any one of these requirements is a sufficient ground to deny the application. United States v. New York, 820 F.2d at 556 (citing United States v. City of Chicago, 798 F.2d 969, 972 (7th Cir.1986), cert. denied sub nom. O'Sullivan v. United States, --- U.S. ----, 108 S.Ct. 771, 98 L.Ed.2d 858 (1988)). Thus, an untimely motion to intervene must be denied. NAACP v. New York, 413 U.S. 345, 365, 93 S.Ct. 2591, 2602, 37 L.Ed.2d 648 (1973); United States v. Yonkers Bd. of Educ., 801 F.2d 593, 594 (2d Cir.1986) (quoting NAACP v. New York, and citing United States Postal Service v. Brennan, 579 F.2d 188, 191 (2d Cir.1978)).
 
 
 27
 The determination of the timeliness of an application to intervene is committed to the sound discretion of the trial court, and we therefore review only as to abuse of that discretion. NAACP v. New York, 413 U.S. at 366, 93 S.Ct. at 2603; United States v. New York, 820 F.2d at 557; United States v. Yonkers Bd. of Educ., 801 F.2d at 594-95. Of course, that discretion is not unfettered. An application's timeliness must be evaluated against the totality of the circumstances before the court. NAACP v. New York, 413 U.S. at 366, 93 S.Ct. at 2603; United States v. Yonkers Bd. of Educ., 801 F.2d at 595. While not necessarily an exhaustive enumeration, the following factors should guide the district court's determination: (1) the length of time the applicant knew or should have known of his interest before making the motion; (2) prejudice to existing parties resulting from the applicant's delay; (3) prejudice to the applicant if the motion is denied; and (4) the presence of unusual circumstances militating for or against a finding of timeliness. United States v. New York, 820 F.2d at 557. In addition, post-judgment intervention is generally disfavored because it fosters delay and prejudice to existing parties. United States v. Yonkers Bd. of Educ., 801 F.2d at 596 (collecting authorities).
 
 
 28
 Applying these criteria, we conclude that the district court did not abuse its discretion by denying as untimely Appellants' motions to intervene. The court noted that Appellants were aware of this and related litigation, and "are not poor, ignorant people whose rights have to be protected." Appellants intervened and participated fully in the state administrative hearings on Farmland's four-county application. No reason appears why they could not have acted similarly in this litigation.
 
 
 29
 Appellants point out that they moved to intervene promptly after learning that the Attorney General of New York State would not appeal the district court's injunction order, and contend that "[u]p to that time, [they] had every reason to believe that the State would defend the constitutionality of Sec. 258-c and the decisions of the Commissioner thereunder, as it always had in the past." Appellants should certainly have been aware, however, that the interests represented by the Attorney General are not coterminous with their own. That officer is charged with the responsibility to "[p]rosecute and defend all actions and proceedings in which the state is interested ... in order to protect the interest of the state...." N.Y.Exec.Law Sec. 63(1) (McKinney 1982) (emphasis added). Thus, the Attorney General "represents the whole people and a public interest, and not mere individuals and private rights." People v. Brooklyn, Flatbush & Coney Island Ry. Co., 89 N.Y. 75, 93 (1882) (citations omitted).
 
 
 30
 Furthermore, if Appellants were permitted to intervene at this late date, there is no question that the settlement concluded by Farmland and the State would be jeopardized. Following the district court's grant of summary judgment and a permanent injunction to Farmland, the State determined that the public interest would best be served by forgoing appeal and permitting Farmland's entry into the four counties and Nassau and Suffolk. In consideration of that permission, Farmland agreed to drop its damage claim against Gerace--subject only to resolution of the question of attorneys' fees, which thereafter occurred. The interests prejudiced by intervention--Farmland's interest in the licenses which have been granted to it, and the State's interest in avoiding continuing litigation and a potential obligation to indemnify defendant Gerace against Farmland's damage claim--are clearly substantial.
 
 
 31
 The harm Appellants face absent leave to intervene--competition from Farmland--does not, in our view, tip the balance in their favor,[7] especially in the context of post-judgment intervention. Rather, "it does not strike us as unjust that intervention on the part of the late-arrivers must yield under all the circumstances herein." United States v. Yonkers Bd. of Educ., 801 F.2d at 596.
 
 
 32
 Since the district court did not abuse its discretion in denying Appellants' motions to intervene as untimely, we have no occasion to consider the other requirements, see United States v. New York, 820 F.2d at 856, for Rule 24(a)(2) intervention. Further, since we accordingly affirm the order denying intervention, Appellants have no standing to appeal any other order entered by the district court, and their appeals from those orders must be dismissed. Marino v. Ortiz, --- U.S. ----, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988).
 
 Conclusion
 
 33
 The order of the district court denying Appellants' motions to intervene is affirmed. The appeals from other orders of the district court are dismissed.
 
 
 
 [1]
 Farmland had previously filed lawsuits against Commissioner Gerace in both state and federal courts concerning its distribution of milk in some of these counties. See Farmland Dairies v. Comm'r. of New York State Dep't of Agric. and Mkts., 650 F.Supp. 939, 949 n. 7 (E.D.N.Y.1987) (opinion below)
 
 
 [2]
 Subsequent to the decision below, section 258-c was amended to delete these grounds for denial, as well as the requirement of a finding by a preponderance of the evidence, effective April 1, 1988
 
 
 [3]
 Since defendant Gerace had by then resigned as Commissioner, his "successor" was "automatically substituted as a party" in accordance with Fed.R.Civ.P. 25(d). No successor having been named at the time of the district court decision, Judge Wexler specified that "[a]ny relief awarded by the Court against the Commissioner in his official capacity shall be enforceable against the individual chosen to take on the Commissioner's responsibilities, either on an acting or permanent basis." 650 F.Supp. at 941 n. 2. Since damages were sought against defendant Gerace in his individual capacity, he was continued as a defendant
 
 
 [4]
 See supra note 1
 
 
 [5]
 An order to that effect was entered the following day. In view of the settlement that had been achieved, the permanent injunction was not continued
 
 
 [6]
 These notices reiterated the appeals from the orders entered January 8 and January 13, 1987, and in addition appealed from the order denying intervention which was entered on February 19, 1987. The notices also appealed from a stipulation and order entered on February 5, 1987 which related to the damage claim against Gerace, which claim was thereafter finally settled (as between Farmland and the defendants-appellees)
 
 
 [7]
 Although, for the reasons herein stated, we do not reach the merits of Appellants' contentions, we note that Appellants' position on the competition issue is severely undermined by the intervening statutory amendment eliminating the grounds upon which former Commissioner Gerace relied for administrative denial of the Farmland four-county application. See supra note 2