**REPUBLIC OF THE PHILIPPINES,**
Plaintiff,

v.

**Ferdinand E. MARCOS, Imelda Marcos, Ralph Bernstein, Joseph Bernstein, Gliceria Tantoco Vilma Bautista, Antonio Floirendo, Paul A. Crotty, as Commissioner of Finance of the City of New York, Department of Finance of the City of New York, City Register's Office of the City of New York, John Kinsella, County Clerk, Suffolk County, New York Land Company, a/k/a Greatneckers Realty, Inc., Canadian Land Company of·America, a/k/a Canadian Land Company of America, N.V. (formerly Lastura Corporation, N.V.), Lastura Corporation, N.V., Herald Center, Ltd. (formerly Volby, Ltd.), Volby Ltd., Glockhurst Corp., N.V., Realmad Properties Ltd., Briwater Associates, a partnership, Nyland (CF8) Ltd. (formerly Ainsville, N.V.), Ainsville, N.V., and Ancor Holdings, N.V., Defendants.**

No. 86 Civ. 2294 (PNL).

United States District Court,
S.D. New York.

March 19, 1991.

Winston & Strawn, New York City (Edward N. Meyer, of counsel), for Sec. Pacific Nat. Bank and Sec. Pacific Mortg. and Real Estate Services, Inc.

Sills Cummis Zuckerman Radin Tischman Epstein & Gross, Newark, N.J. (Jeffrey J. Greenbaum, of counsel), for plaintiff, Republic of the Philippines.

Shereff Friedman Hoffman & Goodman, (Andrew J. Levander, of counsel) and Bernstein & Carter (Philip Carter, of counsel), New York City, for defendants NYLand (CF8), Herald Center, Ltd., Canadian Land Company of America, Inc.

Phillips Nizer Benjamin Krim & Ballon, New York City (Michael J. Silverberg, of counsel), for defendants Joseph and Ralph Bernstein, New York Land Co.

Golenbock Eiseman Assor Bell & Perlmutter, New York City (David J. Eiseman, of counsel), for defendant Glockhurst Corp., N.V.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

Security Pacific National Bank ("SPNB") and Security Pacific Mortgage and Real Estate Services, Inc. ("SPMRES"), collectively referred to herein as "Security Pacific" or "SP," move to intervene. SP claims either intervention "of right" under Rule 24(a) of the Federal Rules of Civil Procedure, or "permissive intervention" under Rule 24(b). The motion is denied.

This action was brought in 1986 by the Republic of the Philippines against its former President and his wife (together with various associated individuals and companies) alleging that President and Mrs. Marcos had used money stolen from the Philippines Republic to purchase buildings in New York as personal investments. The purchases had allegedly · been made through holding companies organized in the Netherlands Antilles. The buildings that were the subject of the action were primarily:

| Building | Nominal Owner (Present Name) |
| --- | --- |
| 40 Wall Street | NYLand (CF8) N.V. |
| The Crown Building | Canadian Land Co. of America, N.V. |
| Herald Center | Herald Center, Ltd. |
| 200 Madison Avenue | Glockhurst Corporation, N.V. |

A preliminary injunction was granted at the instance of the plaintiff, directing that these assets and the proceeds be effectively frozen pending eventual resolution of entitlement of ownership, with the expectation that the Republic would proceed in the Philippines to establish its legal claim and would thereafter seek recognition of that claim through this action.

Each of the four buildings was subject to a mortgage at the time of institution of suit. In time, the mortgagee banks brought foreclosure actions, asserting that the mortgages were in default.

The first such action was brought by Citibank, N.A., which held a mortgage over 40 Wall Street. Citibank's mortgage was eventually foreclosed and the building was sold, producing a surplus of several million dollars (the "40 Wall Surplus Fund"), which thereafter became subject to the preliminary injunction.

Security Pacific never dealt with NYLand (CF8) N.V., the owner of 40 Wall; nor did it ever hold any mortgage over 40 Wall. It did extend loans and receive mortgages over the three other buildings: Crown, Herald Center and 200 Madison. It has sued to foreclose those mortgages. Judgments of foreclosure were rendered as to Herald Center and Crown. SP is seeking judgment of foreclosure as to 200 Madison.

The foreclosure sale of Herald Center produced a substantial deficiency. SP now seeks foreclosure of a cross-collateralizing second mortgage of 200 Madison to cover the Herald Center deficiency. It is unclear whether SP's mortgages will or will not eventually cover its claims.

In the meantime, the various claimants to the equity interest in the buildings have reached a settlement under which they will divide the net equity proceeds.

Security Pacific claims that the four owning companies (the "Borrowers") were under common ownership and "transferred funds among themselves at will without regard for the impact that the misuse of these funds would have on their ability to repay their debts." Proposed Intervening Complaint, ¶ 21. SP also alleges that portions of the funds of the Borrowers were disbursed to Marcos affiliates. It contends that it made loans to its three borrowers based on their false representation that they conducted their business in accordance with normal business practices. SP alleges that it was defrauded by the Borrowers' practices and may therefore recover its losses from the assets of the various owning corporations, over and above its security in its mortgages. The interven-

tion seeks primarily to assert a claim against NYLand, with which SP had no dealings, and against the proceeds of 40 Wall, in which SP had no interest. SP claims entitlement to pierce corporate veils, deeming the four corporations to be a single entity.

 The Philippines has shown convincingly that leave to intervene should not be granted. One who would intervene of right under Rule 24(a) must "(1) file timely, (2) demonstrate an interest in the action, (3) show an impairment arising from an unfavorable disposition, and (4) have an interest that is not otherwise protected." *Farmland Dairies v. Commissioner of New York State Dep't of Agric. and Mkts.*, 847 F.2d 1038, 1043 (2d Cir.1988) (quoting *United States v. New York*, 820 F.2d 554, 556 (2d Cir.1987)).

As to these requirements, SP's application has numerous shortcomings. At most, SP's complaint alleges a cause of action against some of the parties to this action. Whether SP can or cannot show that its three Borrowers made false representations about how they managed their business and mixed their assets with a fourth company in a manner that would justify piercing the corporate veil, has little to do with the contentions placed in dispute by the parties to the existing litigation in which SP seeks to intervene. SP does not demonstrate an interest *in this action.*

Nor does SP show "an impairment arising from unfavorable disposition." SP's interest is to scramble against other claimants for priority against limited assets. It does not seek to support or contradict the claims of any of the parties in the litigation, by reason of its own involvement in those facts.

It is also doubtful whether Security Pacific has timely filed. The action has been in existence for five years. Nearly four years ago, Security Pacific brought actions to foreclose on its various mortgages. Security Pacific has known most of the information it alleges for many years. Its contention that evidence critical to its claim did not come out until the Marcos criminal trial in April 1990 is not convincing. It contends also that it could not claim to have been

affected adversely until the foreclosure sale of Herald Center, which resulted in a deficit. This contention is particularly unconvincing. First, SP did not seek intervention until eight months after the Herald Center sale. Second, it was known long in advance that the Herald Center sale would result in a big deficit. Third, if SP's reasoning is credited, SP is now premature in moving to intervene, for it remains unclear whether the deficit remaining after the Herald Center sale will be covered by the foreclosure of the cross-collateral mortgage on 200 Madison.

More importantly, the action in which SP seeks to intervene is virtually terminated. Years of litigation, including much discovery, went by without SP's participation. Now the claims have been settled. The action remains open only for the distribution of any eventual proceeds, pursuant to the settlement agreement. The only relationship between SP's claims and the settled action is that SP seeks to establish a right to whatever monies the parties may come to possess.

There is no basis for intervention of right.

 It is equally clear that the court should not exercise its discretion in favor of permissive intervention. Whatever the merits of SP's unproved claims, it seeks to advance them *by intervention in this action* only to prevent a distribution of funds pursuant to a settlement agreement. Further, as discussed above, intervention at this time would unduly delay the resolution of the action.

Whatever may be the merits of SP's suit, it remains free to advance its claims in one or more separate lawsuits. I, therefore, do not deal in this ruling with the Philippines' further contentions that the allegations of fraud are not pleaded with sufficient particularity, that the pleadings do not allege sufficient reason to pierce the corporate veil, and that the pleadings, even if accepted as true, fail to show any injury to SP.

The motion to intervene is denied.