Brigitte **DUTTLE**, as Executrix of the Estate of Norbert Duttle, Diethelm Goelkel, Christoph Hoeltzel, Horst Weidl and Paul Hoffman, Plaintiff,

v.

**BANDLER & KASS**, a New York Partnership, Robert Sylvor, and William Werner, Defendants.

Application of Brigitte **DUTTLE**, as Executrix of the Estate of Norbert Duttle, Diethelm Goelkel, Christoph Hoeltzel, Horst Weidl, and Paul Hoffman, Petitioners,

For a Judgment Pursuant to Rule 69, Fed. R.Civ.P., N.Y. CPLR § 5225(b) and (c), N.Y. CPLR § 5227, and N.Y. CPLR § 5228 to Compel Payment of Money or Delivery of Property

v.

William **WERNER**, Maribeth Werner, Mercotrust Ltd. (also known as Mercotrust Aktiengesellschaft), as Trustee of the Casa Trust, a purported Liechtensteinian trust, Glenn Werner, Debi Neustadter, Rick Werner, Cori Werner, and Schwarzfeld, Ganfer & Shore, as a stakeholder.

No. 82 CV 5084 (KMW).

United States District Court, S.D. New York.

March 18, 1993.

Russell Piccoli, Russell Piccoli, Ltd., Phoenix, AZ, Herbert C. Ross, Jr., Oppenheimer, Wolff & Donnelly, New York City, for plaintiff.

Kay K. Gardiner, Asst. U.S. Atty., Roger S. Hayes, Acting U.S. Atty., New York City, for USA in support of Motion to Intervene.

A. Mitchell Greene, Robinson, Brog, Leinwand, Reich, Genovese & Gluck, P.C., New York City, for defendants.

## OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Three motions are currently pending before the court in this action. First, the United States of America ("the government" or "the Internal Revenue Service") moves to intervene in this action. Second, the United States moves for a preliminary injunction, enjoining the court-appointed receiver from liquidating or paying out any assets pursuant to this court's July 10, 1992 receivership order. Third, the current parties to the action ask the court to "so order" a stipulation and order for voluntary dismissal. For the reasons discussed below, the motions for intervention and for a preliminary injunction are denied, and the request for the court to "so order" the stipulation for voluntary dismissal is granted.

## I. BACKGROUND

### A. The Plaintiffs' Involvement Through October 1992

Since 1982, plaintiffs have been pursuing a claim against William Werner and others. In August 1991, after winning a $3.8 million judgment, plaintiffs filed a petition, pursuant to Federal Rule of Civil Procedure 69, to compel Mr. Werner to pay over to them the contents of a Liechtensteinian trust ("the Casa Trust") and other assets held in the names of Mr. Werner's family members. Mr. Werner denied ownership and control of those assets. I referred plaintiffs' petition to Magistrate Judge Francis for the purpose of determining who truly owned the Casa Trust assets. At the same time, plaintiffs, German nationals, also pursued their claim against Mr. Werner in a Liechtensteinian action.

Soon after plaintiffs filed their petition, on September 6, 1991, Mr. Werner filed for bankruptcy. He did not include the value of the Casa Trust among the assets he listed in his petition. Viewing the bankruptcy filing as a delaying tactic, plaintiffs immediately moved this court to withdraw partially the reference from the bankruptcy court for the purpose of lifting the automatic stay with respect to the proceedings in this case. I granted that motion on September 10, 1991, lifted the automatic stay, and the Rule 69 proceeding proceeded. Plaintiffs also moved for a second partial withdrawal for the purpose of determining whether I should dismiss the entire bankruptcy petition as a bad faith filing. I granted that motion, withdrew the reference, and dismissed the petition as a bad faith filing on June 19, 1992.

A few days later, on June 23, 1992, I also adopted Magistrate Judge Francis' recommendation that I allow plaintiffs to execute

their judgment on the Casa Trust assets. Magistrate Judge Francis concluded that William Werner had both fraudulently concealed and fraudulently conveyed millions of dollars of his assets in and to the Casa Trust. In response to defendants' objections, however, I found only that Mr. Werner had fraudulently conveyed those assets, and did not reach the question of whether he had fraudulently concealed them as well. On July 10, 1992, I entered an Injunction and Order, compelling turnover of the Werner and Casa Trust assets to a court-appointed receiver.

That order did not end the case, however, for, on August 14, 1992, Mr. Werner filed a second bankruptcy petition. Seeing the filing as yet another delaying maneuver, plaintiffs again moved this court to withdraw the bankruptcy petition, lift the automatic stay, and dismiss the action as a bad faith filing. Plaintiffs also moved for contempt sanctions against the Werners. In papers submitted to the court in connection with those motions, the parties indicated that they had nearly settled the action, on terms that allowed for transfer of the Casa Trust assets to plaintiffs in Europe, but that settlement had broken down at the last minute. On September 25, 1992, after holding an evidentiary hearing, I granted plaintiffs' motion and dismissed Mr. Werner's second bankruptcy petition as a bad faith filing. I also indicated to Mr. Werner that unless he quickly complied with my July 1992 order, I would impose contempt sanctions on him. Mr. Werner soon turned some of his American assets over to the receiver, but no Casa Trust assets ever found their way into the receiver's hands.

### B. The Government's Involvement Through October 1992

Meanwhile, another party—the Internal Revenue Service ("IRS")—was gaining interest in pursuing a claim against Mr. Werner. It appears that between 1976 and 1988, Mr. Werner and his wife Maribeth paid significantly less in federal income taxes than the IRS thought appropriate. After successfully litigating that issue with the Werners through the tax court, the IRS filed notices of federal tax liens in the Werners' county of residence (New York) in October 1989 and May 1990, thus perfecting their tax lien.

The Werners currently owe the IRS approximately $5 million.

Although the IRS knew of the Casa Trust since 1985, it made no attempt after perfecting its tax lien to execute on the trust assets or to set aside the trust as a fraudulent concealment or conveyance. It first received notice of plaintiffs' intent to do so on October 10, 1991, when plaintiffs served on the IRS their motion to withdraw Mr. Werner's first bankruptcy petition from bankruptcy court and to dismiss it as a bad faith filing in order to execute judgment on the Casa Trust assets. Subsequent papers filed in connection with that motion also indicated that this court had lifted the automatic stay with regard to this proceeding. The IRS did not attempt to intervene in this action, but it did file a proof of claim in the first bankruptcy proceeding in November 1991 (in which Mr. Werner did not list the Casa Trust as among his assets). The IRS subsequently did not attempt to intervene in this action after I dismissed the first bankruptcy filing in June 1992.

After Mr. Werner filed his second bankruptcy petition (in which he did list the Casa Trust assets as his own), plaintiffs again served upon the IRS a motion to dismiss Mr. Werner's bankruptcy filing, in August 1992. It was only when this court held a hearing on plaintiffs' motion, in September 1992, that the IRS began to express an interest in this litigation. According to a declaration submitted in support of its motion for a preliminary injunction, representatives of the IRS attended this court's September 9, 1992 hearing, to obtain information about the proceedings. Reply Declaration of Kay K. Gardiner ¶ 3, Oct. 16, 1992. The next day, the Assistant United States Attorney working on the case contacted plaintiffs' attorney, advising him of the governments liens and requesting that the receiver refrain from disbursing any assets for a brief period, "to permit the Government to research and investigate its position with respect to the Casa Trust assets." *Id.* Plaintiffs' attorney acceded to that request. On October 1, 1992, after researching its position, the government moved for a preliminary injunction, requesting the court to enjoin the receiver from liquidating or

paying out any Werner assets until the court determined whether the IRS or plaintiffs held a priority lien on the Casa Trust assets.

### C. Events After October 1992

By that point, Mr. Werner was appealing to the Second Circuit my dismissal of his second bankruptcy petition as a bad faith filing. He requested a stay of the July 1992 injunction, pending the disposition of the appeal. I decided to partially grant that request, staying only distribution of assets to plaintiffs, but requiring Mr. Werner to comply with the turnover order and allowing the receiver to liquidate any assets he received. Thus, when the IRS filed its motion for a preliminary injunction, I had already granted much of the preliminary relief it requested— enjoining the receiver from distributing assets—pending the Second Circuit's disposition of Mr. Werner's appeal. In light of that fact, and the fact that if the Second Circuit reinstated Mr. Werner's bankruptcy petition, any decision I made on lien priority in a non-bankruptcy context could be rendered moot, I requested the parties to enter into a stipulation to allow me to hold the IRS's motion in abeyance pending the Second Circuit's decision, while preserving the *status quo* regarding the IRS's claim in the assets held by the receiver. To that end, plaintiffs began to negotiate with the IRS a stipulation by which the receiver could liquidate Casa Trust assets on the condition that any priority in the Casa Trust assets I would later find lay in favor of the IRS would carry over to the proceeds from the sale of those assets.

The court, however, never received that stipulation.[1] Instead, on December 22, 1993, all of the current parties to the action notified the court that they had reached a settlement and requested the court to sign a stipulation and order for voluntary dismissal. The settlement agreement calls for a transfer of funds from the Casa Trust to plaintiffs in Liechtenstein, pursuant to a settlement of the litigation between the parties in that locale. It also includes a provision by which plaintiffs relinquish any interest in the assets

currently held by the receiver. The agreement requires the receiver to hold those assets for sixty days after the entry of the proposed stipulation, and, if no court enters any order with regard to those assets during that period, to return them to defendants. Soon after the parties served the government with copies of these papers, the government filed its January 8, 1993 motion to intervene. All parties to the action oppose that motion.

## II. DISCUSSION

### A. The United States' Motion to Intervene

Federal Rule of Civil Procedure 24 requires movants for both permissive intervention and intervention as of right to make a timely application to intervene. In exercising its discretion to determine whether an application is timely, a district court should evaluate the application's timeliness "against the totality of the circumstances before the court." *Farmland Dairies v. Commissioner of New York State Department of Agriculture and Markets,* 847 F.2d 1038, 1044 (2d Cir.1988) (citation omitted). Those circumstances include: "(1) the length of time the applicant knew or should have known of his interest before making the motion; (2) prejudice to existing parties resulting from the applicant's delay; (3) prejudice to the applicant if the motion is denied; and (4) the presence of unusual circumstances militating for or against a finding of timeliness." *Id.* Evaluating these factors against the circumstances of this case leads me to conclude that the government did not timely apply for intervention, and that I should therefore deny its motion for intervention.

1. *The length of time the IRS knew or should have known of its interest before making the motion*

The government argues that in determining the length of time the IRS knew or should have known of its interest before moving to intervene, the court cannot look at the more than ten year life span of this litigation but, instead, only at the time period during which the government's interest was threat-

---

1. I note for the record that the receiver did not liquidate or distribute any assets in violation of the proposed stipulation.

ened. The IRS is, of course, correct that it had no obligation or reason to intervene in the action prior to its interests being threatened. However, by its own admission, this litigation began to threaten its interests in August 1991, and the IRS received notice from plaintiffs of that threat no later than October of that year. *See* Memo in Support of Intervention Motion at 15. That leaves a fifteen month gap between the latest date by which the IRS learned of the threat to its interests and the date on which it filed its motion to intervene. During that fifteen months, the parties to this action litigated ownership of the Casa Trust assets (an issue the court would have to revisit if the IRS intervenes); Mr. Werner filed two bankruptcy petitions; plaintiffs succeeded in dismissing Mr. Werner's two bankruptcy petitions; plaintiffs successfully defended an appeal in the Second Circuit; and the parties reached a settlement of the action. Both the length of the delay and the rapid progression of the litigation during that delay strongly argue against a finding of timeliness.

The IRS offers two explanations for its fifteen month delay in applying to intervene. First, it argues, automatic bankruptcy stays were in effect throughout most of that period, and the IRS did what it could to protect its interests by filing proofs of claim in the bankruptcy proceedings. Second, it asserts, it did not delay for fifteen months, but (if at all) only for twelve months; it argues that the appropriate period by which to evaluate timeliness ends, not with the IRS's January intervention motion, but instead, with its October 1992 motion for a preliminary injunction. Neither of these circumstances justifies its fifteen month delay in moving to intervene.

Regarding the bankruptcy actions and the effect of the automatic stays, the IRS is simply incorrect that an automatic stay prevented it from intervening in this action for eight months. On September 10, 1991, only four days after Mr. Werner filed his first petition, this court lifted the automatic stay with regard to the Rule 69 proceeding. Consequently, an automatic stay applied to this action for only approximately one month—after Mr. Werner's second bankruptcy filing in August 1992—out of the fifteen during which the government knew of its interest yet did not apply to intervene. Although the IRS argues that it is unclear whether the September 10 order would have allowed plaintiffs to collect any money from defendants, the Rule 69 proceeding clearly continued and the IRS certainly could have moved to intervene to help determine who—Mr. Werner, plaintiffs, or the IRS—held priority rights in the Casa Trust assets.

In any event, even if the automatic stay had prevented intervention, the government still has left unexplained a long period of unpreparedness, as well as its inactivity during the number of months when Mr. Werner had no bankruptcy action pending. The IRS admits that from October 10, 1991 on, it knew of plaintiffs' motion to dismiss Mr. Werner's first bankruptcy petition as a bad faith filing. Memo in Support of Motion to Intervene at 9 n. 1. Yet when this court granted plaintiffs' requested relief eight months later, instead of revealing that it had utilized that long period to prepare to protect its interests if plaintiffs' requested relief was granted, the IRS remained silent; it did not move to intervene during the nearly two month period during which no automatic stay was in place, despite the fact that at that point, it seemed likely that ownership and disposition of the Casa Trust assets would be decided in this forum, without any protection for the IRS's interests.[2] Nor, after Mr. Werner's second bankruptcy petition was dismissed in September 1992, approximately one month after it was filed, was the government ready to move, despite the fact that papers filed in connection with the dismissal

---

2. Although two months may seem like a short period of time during the course of most litigation, anyone observing this action knew of its fast moving pace during the summer of 1992. After the dismissal of Mr. Werner's first bankruptcy action, the parties engaged in intense settlement negotiations, and they nearly settled the action, *on terms that would have led to a transfer of money in Europe, not through the American receiver.* When the settlement negotiations broke down, plaintiffs' attorneys engaged in a flurry of activity that brought a defendant who was fighting tooth and nail to keep his assets out of plaintiffs' reach to the brink of compliance in the face of contempt sanctions.

proceeding indicated that the parties had nearly settled the action, and that the terms of the settlement called for a transfer of funds *in Europe,* not via the court-appointed American receiver. *See* Affidavit of Russell Piccoli ¶¶ 3–6, in support of Order to Show Cause, Aug. 26, 1992; Settlement Agreement, attached as Exhibit A to Affidavit of William Werner in Opposition to Order to Show Cause, Sept. 2, 1992. In fact, the government admits in its intervention papers that *it was not until September 1992 that the government began to research its position* vis-a-vis the Casa Trust assets. Government's Memo in Support of Intervention at 10 n. 1. This history makes clear that it was not the automatic stays that prevented an eager and willing litigant from moving to intervene in this action. Instead, for reasons known only to it, the IRS waited nearly one year to even begin researching whether it should involve itself in this litigation. It did not act in a timely manner.

The government next argues that plaintiffs wrongfully assert that the relevant period for determining timeliness ends with the government's January motion to intervene; it believes that period should end with its October 1992 motion for a preliminary injunction, which it sees as a suitable proxy for an intervention motion. The government's focus on its October 1992 motion is misplaced. After all, Rule 24 requires a timely application *to intervene;* it does not allow parties to reserve their right to intervene by taking minimal steps to protect their interests while avoiding the costs and risks of full participation in litigation. And minimal steps were all the IRS took. The motion aimed only at assets in the receiver's possession currently and in the future; it did not seek to give the

government any right in the litigation. Even if the court had granted the relief requested in the preliminary injunction motion, nothing would have prevented the parties from settling the action on the same terms they here seek to do. And, as anyone observing the litigation—as the IRS should have been doing at that point—would know based on the submissions detailing the parties earlier, failed settlement agreement, a settlement requiring a transfer of funds in Europe, bypassing the American receiver, was a strong possibility, and one from which an injunction aimed at the American receiver would not protect the IRS.[3]

It is for similar reasons that the IRS's focus on the proposed stipulation is also misplaced. The government seems to assert that the stipulation requested by the court in order to allow the receiver to liquidate certain assets estops[4] the parties from now opposing intervention or settling this action. Just as with the motion, however, the stipulation aimed only at assets in the receiver's possession currently and in the future; it did not purport to give the government any right in the litigation as a whole. As the government knows, the court and the parties requested the stipulation to allow the receiver to maximize the value of the rapidly depreciating assets in his possession via liquidation, while promoting judicial efficiency by not forcing the court to decide the government's motion to enjoin *the receiver* when a pending appeal could have rendered any decision moot. The stipulation thus would have allowed for liquidation of *the assets in the receiver's possession* without affecting any right the government might later be found to have in *those assets.* No mention was ever

---

**3.** I note that the IRS argues that its intent in filing the preliminary injunction motion was to preserve the *status quo* with regard to all assets involved in the litigation, not just with regard to those held by the receiver, and that it did not consider that all of the assets might not be delivered to the receiver. I find it somewhat surprising that an organization with so much litigation experience would assume that once the parties to an action received an order from the court, the parties could only proceed by fully complying with that order. Apart from the usual possibilities that the parties could either seek to modify the order or to settle the action in compliance with it, it was obvious from the near settlement

in the summer of 1992 that a European settlement, bypassing the American receiver, was always a strong possibility in this action.

**4.** I recognize that the government neither uses the term estoppel nor argues pursuant to the case law discussing that term. However, its focus on the stipulation manifests a view that once the court ordered the stipulation and plaintiffs agreed to enter into it, the parties could not settle this litigation without protecting the government's interests in all assets addressed by the litigation.

made of any other assets, however, and the court did not envision the stipulation effecting any assets other than those in the receiver's possession (particularly because the government's motion aimed only at such assets). Nor did the agreement to enter into the stipulation represent any acquiescence on plaintiffs' part to full government intervention in this action,[5] a promise that the plaintiffs would continue to expend their resources in getting the trust assets to the receiver for the IRS's benefit, or a guarantee that the parties would not settle the action on terms that did not involve assets subject to the stipulation.

The government's focus on the failure to enter into the stipulation is misplaced for another reason. The settlement will not affect any benefits the government would have received from the proposed stipulation, because plaintiffs are expressly relinquishing any rights in the assets currently held by the receiver. In fact, provisions in the settlement agreement by which plaintiffs relinquish those rights and by which the receiver agrees not to disburse assets for sixty days after settlement mean that the proposed settlement would leave the government's interest in the assets held by the receiver more secure than the stipulation would have. In short, neither the motion for a preliminary injunction nor the proposed stipulation renders the current motion timely, because neither sufficed to take the place of full scale intervention. Even if the parties had entered into the proposed stipulation, and the court had granted the preliminary injunction, the proposed settlement would still be viable, because the stipulation and injunction did not address the assets to be transferred by the settlement agreement, and the settlement leaves the assets that would have been covered by the preliminary injunction and stipulation free of any claims by plaintiffs.

I thus conclude that the government knew of its interest for fifteen months before moving to intervene and that it has not offered any reasonable explanation for the fifteen month delay. This delay strongly militates in favor of denying its motion.

2. *Prejudice to the existing parties resulting from IRS's delay*

The prejudice the existing parties will suffer as a result of the government's delay provides a second reason to deny intervention. The parties would suffer two types of prejudice from allowing intervention now: first, that resulting from the government's failure to intervene when it first learned of the threat to its interests, and second, that resulting from allowing the IRS to intervene at this time.

Regarding the first category, plaintiffs, in particular, will suffer prejudice from the government's long delay. Had the IRS moved to intervene when it first became aware of the threat to its interests, plaintiffs could have potentially saved more than one and one-half years of effort and tens of thousands of dollars in legal fees they have accrued in trying to recover on assets the IRS now claims they have no right to possess. During this period, plaintiffs have made extraordinary efforts in three different actions in this court, and one successful appeal to the Second Circuit, against a defendant who filibustered and obstructed every step of the way. Had the government intervened when it first learned of its interest, plaintiffs would have saved much of their efforts. They would first have determined whether plaintiffs or the IRS held the superior claim, and, if the IRS won, plaintiffs certainly would not have pursued their claim any further in this forum, but would instead have conducted their lives and spent their resources in a very different way, for example, by focussing on their Liechtensteinian action against Mr. Werner.

As for the second type of prejudice, the harm flowing from forcing parties to continue with ten-year-old litigation they currently want to settle seems obvious. The parties would be forced to expend more time and

---

5. Indeed, on page one of plaintiffs' memorandum in opposition to the preliminary injunction motion, plaintiffs noted that the government did not move to intervene, and attributed that failure to move to a lack of standing on the government's part. Moreover, one of plaintiffs' primary arguments in opposition to the preliminary injunction motion addressed the IRS's lack of timeliness in filing it, thus making somewhat surprising any government argument that the plaintiffs should be foreclosed from arguing untimeliness in opposition to an even later intervention motion.

resources, and to relitigate issues—such as whether Mr. Werner fraudulently concealed his assets—they long since left behind. Had the IRS timely intervened, little of this would have been necessary. The prejudice to the current parties, "the most important consideration in deciding whether a motion for intervention is untimely," Wright, Miller, and Kane, Federal Practice and Procedure: Civil 2d § 1916 (1986), strongly militates toward denying intervention.

### 3. Prejudice to the IRS if intervention is denied

The IRS, in contrast, is not unfairly prejudiced by denial of intervention. This action has not and will not adjudicate any of its rights in any of Mr. Werner's assets, and thus will have no collateral estoppel or *res judicata* effects on any future government action. In fact, by effectively turning over the assets currently held by the receiver to the IRS, the proposed settlement will make it easier than it otherwise might have been for the IRS to collect at least some money from the Werners.

The only negative impact the government will suffer is an inability to capitalize on the extraordinary efforts of private litigants in setting aside the Casa Trust and pursuing Mr. Werner to the point that he desires settlement—efforts the IRS itself seemed unwilling to make. Denial of intervention will leave the IRS in no worse a position than it would have been in had this litigation never commenced; it leaves Mr. Werner free to dispose of his assets just as he would have been had plaintiffs never commenced this litigation. After all, even though the government's interests in the Casa Trust were threatened by this litigation only since August 1991, the government knew about the Casa Trust since January 1985 and it assertedly perfected its interest in it in October 1989 and May 1990. Nevertheless, from October 1989 through August 1992, the government made no efforts to set aside or pursue

its interest in the Casa Trust.[6] It seemed to have little interest in paralleling plaintiffs' efforts to set that trust aside and obtain the assets it held. By waiting as long as it did the IRS always risked dismissal of this action and settlement of the dispute via the Liechtensteinian courts. The only prejudice to the IRS is thus that it may not use this action to recover a fund it did not help to create. "[A]ny prejudice to the [IRS] resulting from the denial of intervention may be attributed to [its] own failure to seek intervention when [it] first had reason to become aware that [its] interests were being threatened]." *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 595 (2d Cir.1986). As the Second Circuit has explained,

> [I]n making the choice between the possibility of harm to the late-arriving prospective intervenors as against the possible harm to the parties who have participated diligently during the pertinent portions of this litigation, it does not strike us as unjust that intervention on the part of the late-arrivers must yield under all of the circumstances herein.

*Id.* at 596 (citation omitted).

### 4. The presence of unusual circumstances militating against a finding of timeliness

To the extent unusual circumstances exist in this case, they militate against a finding of timeliness. Apart from the fact that the parties to this action want to settle it, a factor which militates strongly for a finding of untimeliness, allowing the government to intervene at this late date would create a perverse incentive to future litigants in situations such as this one. It is important to remember that until plaintiffs expended their extraordinary efforts to set aside the Casa Trust, the Werners were freely exploiting that fund, diminishing its value daily, as the IRS—which claims an interest in it dating to October 1989—stood idly by and did nothing. Yet the IRS now asserts that the parties who

6. The government argues that it adequately pursued its interests in the assets by filing proofs of claim in Mr. Werner's bankruptcy actions. However, Mr. Werner did not list the Casa Trust assets as his own in his first bankruptcy filing. It thus seems apparent that the government did nothing to pursue those assets until August 1992, when it filed a proof of claim in the second bankruptcy proceeding, in which Mr. Werner acknowledged the Casa Trust assets as his own. This delay only confirms the court's view that the government expended energy on recovering those assets only after plaintiffs made it possible for it to do so.

did something should not be allowed to benefit by it. Under this logic, plaintiffs should never have commenced this litigation, because no matter how far they proceeded with it, the IRS could come in and take the benefits whenever it wanted. Thus, only the Werners would have benefitted; they would have had more years—perhaps forever—to diminish the Casa Trust's assets, while no one could act except for the IRS, who refused to act. This cannot be right. There must come a point when the IRS—like any other litigant—must enter pending litigation or step aside and allow it to continue (or in this case, end) without it. That point has long since passed in this case.

In sum, after considering the totality of the circumstances before me, I find that all of the factors used to guide the timeliness determination militate in favor of a finding of untimeliness. I consequently deny the motion to intervene.

### B. The Motion for a Preliminary Injunction

Still pending before the court is the government's motion for a preliminary injunction, enjoining the receiver from liquidating or paying out any assets until the court determines whether plaintiffs or the IRS has a priority interest in those assets. Because, by the terms of the proposed settlement, plaintiffs are relinquishing any rights in the assets held by the receiver, that motion is now moot and is therefore denied.

### C. The Stipulation of Settlement

All parties to this ten-year-old litigation consent to the proposed settlement. I see nothing unfair in the proposed settlement and no reason to force these parties to continue with the litigation. Accordingly, I will grant the parties' request to enter the stipulation of dismissal.

### III. CONCLUSION

For the reasons discussed above, the United States' motion to intervene is denied, as is its motion for a preliminary injunction. This action is dismissed in accordance with the stipulation for voluntary dismissal.

SO ORDERED.